(f) Acknowledgements. Each of the acknowledgements set forth in Section 2 is true, accurate and complete in all respects. Without limiting the generality of the foregoing sentence, except as expressly set forth in Section 2, (i) no Major Decisions have been made without the consent of the Members, acting through the Supervisory Board and (ii) the Management Persons are not in violation of or default under, and have not caused any other Person to be in violation of or default under, the Operating Agreement or any other agreement between any Management Person and any ALH Person.

(g) Debt to Management Persons. Except as expressly set forth in Schedule 4.1(g) hereto, there is no indebtedness owing from any ALH Person to any Management Person or any Management Person Affiliate, other than monies owed for the reimbursement of out-of-pocket expenses related to travel (such as airfare, meals and hotel accommodations) and similar matters incurred by any Management Person in the ordinary course of business and not material in amount (such monies being referred to hereinafter as "Out-of-pocket Expenses"). Notwithstanding anything to the contrary set forth in this Agreement or otherwise, no ALH Person shall be obligated or otherwise required to repay any indebtedness (other than Out-of-pocket Expenses) owing to any Management Person or Management Person Affiliate as of the date of Closing; provided, however, if, on February 28, 2002, there shall have been no default under this Agreement or any of the Management Persons' Deliveries and all of the representations and warranties contained in this Agreement (including, without limitation, this Section 4.1(g)) shall have been true and correct when made, the ALH Persons shall repay the amount of indebtedness owing by the ALH Persons as of the date of Closing and set forth on Schedule 4.1(g) by offsetting such amount against the Initial Payment (as defined in the Note) owing by the Management Persons to ALH under the Note in accordance with the terms thereof (it being understood and agreed that any amounts owing by any Management Person or Management Person Affiliate to any ALH Person as of the Closing shall be payable promptly in cash to such ALH Person).

(h) Arbor Debt. The aggregate outstanding amount of the Arbor Debt including the Interest Amount owing thereon as of the date hereof is approximately $2,276,463, and this obligation is currently in default.

(i) Tampa Loan. The aggregate outstanding amount of the indebtedness owing by ALH Florida and Sedona at Avila Limited Partnership to New South Federal Savings in connection with the Tampa Loan is $706,316.50 (principal and interest).

(j) Berkshire Loans. In connection with the Berkshire Loans, the aggregate outstanding amount of the indebtedness owing by Berkshire to ALH and the other ALH Persons is $329,185.45, of which $289,000 is principal and $40,185.45 is interest and by Madaket to ALH is $218,000, of which $200,000 is principal and $18,000 is interest. The execution, delivery and performance by ALH of the documents and instruments with respect to the Berkshire Loans (collectively, the "Berkshire Documents") were duly authorized by each of Berkshire and Madaket by all necessary corporate action and were duly executed and delivered by each of Berkshire and Madaket. The Berkshire Documents are valid, binding and enforceable in accordance with their terms and are not subject to any right of offset by Berkshire, Madaket or any other Person.

(k) No Indebtedness.  Except for the Berkshire Loans, no ALH Person has made any loan to any Person for, is the payee with respect to, or has a right to receive payment for, any indebtedness in excess of $25,000.

(l) Intra-Company Loans.  Except as set forth on Schedule 4.1(l), there is no indebtedness owing from any ALH Person to any other ALH Person (other than indebtedness owing from any Member to another Member).

(m) Defaults.  Except as set forth in Section 4.1(h) hereof, as of the date of the Closing, to the best knowledge of the Management Persons after due inquiry, there are no violations or defaults (whether matured or unmatured) under, or existing rights of offset, demand rights, rights to accelerate, or claims or counterclaims in favor of any third party against, directly or indirectly, any ALH Person that arise pursuant to, the Tampa Loans, the Berkshire Loans, the Arlington Guarantee or the ALH II Guarantees, or any underlying note, instrument, loan agreement, security agreement or other document entered into in connection therewith or for which such guarantee was made.

(n) Financial Statements.  Each of the financial statements and reports delivered or to be delivered to ALH, including without limitation the audited consolidated financial statements of ALH and of ALH II for the fiscal year ending December 31, 2000, present fairly and accurately the consolidated financial condition of ALH and of ALH II, as applicable, and results of operations for the periods covered by such statements.  Since the end of the periods covered by such financial statements and reports, no change which materially and adversely affects ALH and of ALH II, as applicable, or their respective Subsidiaries has occurred and such financial statements and reports adequately reflect the financial condition of ALH and of ALH II, as applicable, and their respective Subsidiaries as of the date of this Agreement.

(o) Documents Delivered.  Each of the reports and documents delivered by or on behalf of any Management Person to Shamrock Holdings of California, Inc. ("SHOC") and its agents and employees in connection with the entering into of this Agreement and the information contained therein is true, accurate and complete in all material respects and does not omit to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, and no change has occurred or exists which makes such documents or information inaccurate in any material respect.

(p) Subsidiary Boards.  Neither the articles of incorporation, the by-laws nor any other charter document of any Subsidiary permits (i) the board of directors of such Subsidiary to take any action which such board of directors is authorized or required to take unless a meeting of the board of directors is held or the board of directors acts by unanimous written consent or (ii) any meeting of the board of directors of such Subsidiary to be held without sufficient prior notice to each of the members of such board of directors.  No board of directors of any Subsidiary has established, or delegated any authority to, any committee (whether such committee shall consist of any of such directors or any other Person) to act on behalf of the board of directors of such Subsidiary.

11

Case 3:05-cv-00256    Document 13-15    Filed 09/02/2005    Page 13 of 13

(q)    ALH II Guarantees.  Schedule 2.0(k) completely and accurately sets forth all indebtedness obligations guaranteed by ALH II as of June 30, 2001.  Except for the guarantees set forth on Schedule 2.0(k), neither ALH nor any of its Subsidiaries has, directly or indirectly, guaranteed (by surety, pledge or otherwise) or agreed to guaranty (by surety, pledge or otherwise) any indebtedness obligations.

4.2 Representations and Warranties of ALH.  ALH represents and warrants to the Management Persons as follows:

(a) Duly Organized, Validly Existing, Good Standing.  ALH is a duly formed and validly existing limited liability company in good standing under the laws of the State of Delaware and has the requisite power and authority to perform its obligations under this Agreement.

(b) Authority.  The execution and delivery by ALH of this Agreement and the other agreements executed in connection herewith have been duly authorized and all necessary limited liability company action has been taken, and such execution and delivery will not contravene or conflict with the Operating Agreement.  Subject to (i) applicable bankruptcy, insolvency, reorganization, fraudulent transfer, moratorium, or similar laws from time to time in effect affecting creditor's rights generally and (ii) general principles of equity whether such proceedings are considered in a proceeding at law or in equity, this Agreement has been duly executed and delivered by ALH and constitutes a legal, valid and binding obligation of ALH, enforceable against ALH, in accordance with its terms.

## 5.0 Releases.

5.1 Release by ALH.  Subject to and conditioned upon the satisfaction of the Closing Conditions set forth in Section 6.1 below, and further subject to and conditioned upon (i) the validity and effectiveness of the release of the indebtedness owing by ALH II, Inc. described in the Acknowledgment (the "ALH II Release") and (ii) the indefeasible payment in full, in cash, of all amounts owing with respect to the Note and each of the other Management Persons' Deliveries when and as such payments are due in accordance with the terms thereof, including, without limitation, (A) the payment of all principal and interest obligations thereunder (including, without limitation, any interest accruing after the filing for bankruptcy by or against or any other insolvency event with respect to any Management Person, notwithstanding the fact that such Management Person may not be liable therefor, and all attorneys' fees in connection therewith), (B) all fees, costs and expenses incurred in connection therewith and (C) any other liabilities arising pursuant thereto (including, without limitation, any and all fees and expenses (including attorneys fees and disbursements of counsel) incurred or paid by ALH or any ALH Person in enforcing any rights with respect to, or collecting against, any Management Person pursuant to the Note or any such Management Persons' Deliveries) (collectively, the "Aggregate Claim") (it being understood and agreed that if any such payment (or part thereof) to ALH under the Note or any of the other Management Persons' Deliveries is rescinded or avoided or must otherwise be repaid by ALH, then such payment shall be deemed to not have been made for purposes hereof and any prior release pursuant to this Section shall be without effect), ALH on behalf of itself and each of the other ALH Persons and others claiming through or under it (for

12

# EXHIBIT FF

## Pamela Jarvis

| | |
|---|---|
| **From:** | Pamela Jarvis |
| **Sent:** | Friday, August 06, 2004 7:56 PM |
| **To:** | 'Isaac M. Neuberger' |
| **Cc:** | Thomas M. Wood; avie@arenson.co.il; bjj@jesselson.com; mgj@attglobal.net; konig@skynet.be; starjewelers@aol.com; mfrankel@iaac.com |

**Subject:** RE: ALH

Dear Isaac:

I am not going to respond to your continued distortions and irrelevancies regarding the scheduling of a conference call for today, since they are now also moot.

Having the conference call on August 25, at noon New York City time, is fine with us. As I have said before, Mr. Buchler (and possibly others from Shamrock, to be determined) will be on the call. We expect that Mr. Arenson (and possibly other Class B Members) will also be on the call. I suggest that we not set a specific time limit for the call, but rather let it continue it for as long as it is productive.

As far as the agenda is concerned, I believe that Mr. Arenson is already up-to-date with respect to both MHI and ALH as a whole, but Shamrock does not mind doing a recap of current status if you would like one. After that, Shamrock would expect to hear whatever alternative proposals your clients may want to make. Thus far, you have given no indication that they have any such proposal. But obviously, if they do, they are free to -- and should -- communicate it in writing right away. There is no need for your clients to wait for the conference call, and thus there is nothing in the scheduling of the call that should "affect or impact the MHI situation." With regard to the airing of your historical gripes, we can see no urgency and do not intend to spend time on that subject during the call.

In addition, although Mr. Buchler is on vacation with his family next week, he is willing to make time for a one-on-one conversation with Mr. Arenson (without lawyers or others). If this is of interest to Mr. Arenson, please give me some dates and times from August 9 - 13 when he would be available to receive a call from Mr. Buchler, and I will coordinate.

Finally, you seem to be laboring under the misapprehension that Shamrock has not been adequately focused on the "crisis" at MHI. The reality is that Shamrock has long been, and remains, extremely attentive to and actively involved in the situation -- something that, with all due respect, cannot be said of your clients. You are equally off base in asserting that Shamrock, for reasons of its own, "caused ALH to sue Lamm and Zich." Lamm and Zich owe ALH millions of dollars, pursuant to confessions of judgment they signed three years ago. Mr. Arenson, as Class B representative, in the exercise of his fiduciary responsibilities, was aware of and consented to the taking of legal action to collect these unpaid sums for the benefit of ALH and all of its investors. With regard to the inquiry from Swiss Re, you should know that Lamm and Zich simply passed it on to Shamrock and asked Shamrock to take care of it. They seem to have no current or recent relationship with Swiss Re, and we are mystified as to the basis for your contention that they "may prove important" to finding a solution with Swiss Re.

I trust that we have now laid the groundwork for constructive communications going forward.

Sincerely,

Pamela Jarvis

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Friday, August 06, 2004 5:23 PM
**To:** Pamela Jarvis
**Cc:** Thomas M. Wood; avie@arenson.co.il; bjj@jesselson.com; mgj@attglobal.net; konig@skynet.be;
starjewelers@aol.com; mfrankel@iaac.com
**Subject:** RE: ALH

*IMN- PLEASE NOTE RESPONSES IN CONTEXT*

---

**From:** Pamela Jarvis [mailto:pjarvis@josephnyc.com]
**Sent:** Friday, August 06, 2004 3:29 PM
**To:** Isaac M. Neuberger
**Cc:** Thomas M. Wood; avie@arenson.co.il; bjj@jesselson.com; mgj@attglobal.net; konig@skynet.be;
starjewelers@aol.com; mfrankel@iaac.com
**Subject:** RE: ALH

Dear Isaac:

I have now reviewed with Shamrock both of your latest emails.

In my very first letter to you, I explained to you that vacation plans and other previously
scheduled commitments in August would have to be taken into account. The Shamrock
people and I have obligations to our families during the weeks of August 9 and 16 that
we intend to honor.

*IMN- EVERYONE INVOLVED HAS FAMILY COMMITMENTS.CONSIDERING THE URGENCY OF THE
MHI SITUATION (AS REFLECTED IN YOUR PRIOR E-MAILS) SCHEDULING A PHONE CALL ON A
DAY OTHER THAN THE SABBATH IN ISRAEL, SEEMS LIKE A SMALL BURDEN,IN BALANCE.*

As you may recall, I originally proposed a meeting in September. You complained that
this was not soon enough, so we proposed a conference call during the week of August
23. Because the weeks of August 9 and 16 were not feasible, we also offered to do a
conference call today, and you -- by all appearances -- agreed. (Contrary to your
assertion, although you did ask about Monday, you said nothing to suggest that "Friday
would not work." In response to my specific request yesterday that you get back to me
right away "[i]f you would like to have a conference call tomorrow," you stated that 10 am
LA time -- the earliest of the times I had proposed for today -- was "the absolute latest
time that we can start." It would make absolutely no sense for you to have said that if
today had been entirely out of the question.) Only now have you belatedly attempted to
depict this as some kind of anti-Semitism. If this were not so absurd, it would be
offensive.

*IMN- YOUR E-MAIL OF LAST NIGHT, SENT AFTER BUSINESS HOURS, SUGGESTING A CALL
TODAY...WHICH DUE TO THE 10 HOUR TIME DIFFERENCE, FELL ON THE SABBATH IN ISRAEL,
BEGS THE QUESTION. INSENSITIVITY NEED NOT BE ANTI-SEMETIC. ACTUALLY, I THINK THAT
EVERYONE INVOLVED IS JEWISH..*

The Shamrock people and I are well aware of the Sabbath laws and the fact not all
Jews, in Israel or elsewhere, observe them. (As it happens, my relatives in Israel are not

observant, but I have friends there who are -- I assure you that I that know when they will and will not talk on the phone.) In particular, I am told that Mr. Arenson has on any number of occasions participated in telephone calls and traveled on Friday nights and Saturdays. You indicated that Mr. Jesselson might also participate; my understanding is that he resides in New York, so I am unable to see why a call at 1 pm New York time would be a problem. Baltimore is in the same time zone as New York, and in any event you gave no indication that the 1 pm time was a problem for you (or for Mr. Jesselson).

*IMN- BY THE TIME THAT I RECEIVED YOUR E-MAIL, I WAS UNABLE TO RECAH MR. ARENSON. BENJ. JESSELSON IS OBSERVANT AND IS IN ISRAEL AS ARE THE OTHER PARTICIPANTS,INCLUDING THOSE IN EUROPE.*

You claim to be trying to find "a peaceful solution," but Shamrock and I see no evidence of this. To the contrary, you seem to be intent on picking a fight. However, if you are prepared to restrain your belligerence, Shamrock and I are prepared to participate in a conference call with you and your clients.

*IMN- I AM SORRY THAT YOU FIND THIS SITUATION TO BE BELLEGERANT. NEITHER I NOR THE Bs CREATED THIS PROBLEM.*

   Shamrock and I can make ourselves available on August 24, 25 and 27. I suggest that you find out from your clients what their availability is on those dates, and then let me know. I am confident that we can come up with a mutually convenient time for all concerned.

*IMN- I AM IN PARIS ON THE 24TH AND FRIDAY THE 27TH PRESENTS THE SAME ISSUE AS TODAY. ASSUMING THAT OUR CLIENTS ARE AVAILABLE AND DECIDE TO HAVE A CONFERENCE CALL,ON AUGUST 25,  WILL NOON (EAST COAST TIME-US) WORK FOR SHAMROCK?*

*WHO FROM SHAMROCK WILL BE AVAILABLE?*

*HOW MUCH TIME WILL BE ALLOTED?*

*IF THE 24TH IS THE ONLY DAY, I WILL ARRANGE TO BE ON IT, EVEN FROM PARIS.*

   I appreciate your agreement that any conference call will be off the record, etc. I also note that (putting aside your remarks about the attendance of Fried Frank, as ALH's counsel, at board meetings) you do not seem to disagree with my proposal concerning the content of the agenda for the call -- that, too, should facilitate constructive communication.

*IMN- THE FIRST PART OF THE AGENDA IS FINE, BUT WE ARE LOSING VALUABLE TIME THAT THE INTERESTS OF ALH REQUIRE. PUTTING OFF THIS CRITICAL CONFERENCE CALL FOR NEARLY 3 WEEKS IS BUT ANOTHER CONCERN THAT WE HAVE ABOUT SHAMROCK'S STEWARDSHIP. WE HAVE DONE OUR BEST TO MITIGATE THE DAMAGE AND INJURY AND SHORT OF SEEKING JUDICIAL INTERVENTION, WE HAVE NO WAY TO FORCE SHAMROCK TO FOCUS ON THIS CRISIS ANY SOONER THAN THEY ARE WILLING TO.*

*IMN-OF MATERIAL CONCERN TO THE Bs, IS RECEIVING AN ASSURANCE FROM SHAMROCK, THAT BY DEFERRING THIS CALL OR MEETING TO ACCOMODATE THE VACATIONS ON THE SHAMROCK SIDE, THAT IT WILL NOT OTHERWISE AFFECT OR IMPACT THE MHI SITUATION.*

*PLEASE LET ME HEAR FROM YOU ON THIS.*

The earlier of your two emails today states that you think I know that "Lamm is represented by Covington and that Zich is represented by other counsel, both of whom are cooperating with" you and your clients. I have no knowledge of their representation by counsel or the nature of your cooperation with each other. However, if it concerns your clients' threats against Shamrock, I would certainly like to know more about it before our conference call. I look forward to hearing from you.

*IMN- SHAMROCK HAS CAUSED ALH TO SUE LAMM AND ZICH. THEY HAVE COUNSEL. WE BELIEVE THAT ZICH AND LAMM CAN BE HELPFUL IN DEALING WITH SWISS RE AND THAT SHAMROCK, FOR REASONS THAT IT BEST UNDERSTANDS, HAS ALIENATED BOTH. IN FINDING A SOLUTION, THEY MAY PROVE IMPORTANT. CERTAINLY, JOHN LAGUARDIA IS NOT THE ANSWER.*

Sincerely,

Pamela Jarvis

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------- x
ALH HOLDINGS LLC,                                    :
                                                     :
                        Plaintiff,                   :
                                                     :
           - against -                               :      **AFFIDAVIT OF**
                                                     :      **CONFESSION OF**
                                                     :      **JUDGMENT**
                                                     :
LION & LAMM CAPITAL, LLC                             :
                                                     :
                                                     :
                                                     :
                        Defendant.                   :
------------------------------------------------------------- x

STATE OF NEW YORK    )
                         ss.:
COUNTY OF NEW YORK )

        SHALOM E. LAMM being duly sworn, deposes and says:

        1.    I am the Chairman of LION & LAMM CAPITAL, LLC ("LION")
and am duly authorized by LION and by the laws of the State of Delaware to make on
LION's behalf the representations in this Affidavit of Confession of Judgment.

        2.    LION is a Delaware limited liability company whose principal office
is located at 489 Fifth Avenue, New York, New York. On LION's behalf, I hereby
consent to jurisdiction and venue, and authorize entry of judgment against LION in the
Supreme Court of the State of New York, New York County, New York.

        3.    I hereby confess judgment on behalf of LION pursuant to CPLR
3218 in favor of ALH Holdings LLC ("Plaintiff") in the amount of $1,900,000, plus

73206

interest and other costs and expenses and authorize Plaintiff, or Plaintiff's heirs,

representatives, assigns and successors in interest, to enter judgment in that amount

against LION only under the circumstances described below.

      4.    This confession of judgment is for a debt justly due to Plaintiff

pursuant to a certain Operating Agreement, Management Agreement and Promissory

Note, complete and accurate copies of which are appended hereto as Exhibits A, B and C,

respectively. The Management Agreement and Promissory Note provide that LION is

liable, jointly and severally with certain other persons, to the Plaintiff in the amount of

$1,900,000 plus interest on $1,400,000 thereof at the rate of 15% (and subject to

adjustment as set forth in the Promissory Note) from the date of the Management

Agreement and other costs and expenses set forth in the Promissory Note. LION

executed the Management Agreement and the Promissory Note as of July 1, 2001. LION

is therefore indebted to the Plaintiff in the amount of $1,900,000 plus interest and other

costs and expenses.

      5.    As of the date hereof, no portion of this obligation has been paid.

Judgment may be entered against LION for the full amount, or for such amount as

remains due and owing on the date this Affidavit of Confession of Judgment is filed with

the Court. In the event of any shortfall between amounts owing pursuant to the

Promissory Note and amounts collected pursuant to this Affidavit of Confession of

Judgment, LION agrees that nothing shall preclude Plaintiff from collecting such further

amounts as may be owing pursuant to the Promissory Note and related documents.

2

6.    This confession of judgment is not for the purpose of securing Plaintiff against a contingent liability, and is not an installment loan within the meaning of CPLR 3201.

7.    LION has had legal advice by counsel of its own choosing in connection with this confession of judgment. There are no other agreements or understandings which in any way limit, condition or alter its obligations hereunder. On behalf of LION I understand, have considered and agree to each of the provisions hereof, and I am signing this Affidavit of Confession of Judgment without any coercion, force, pressure, or undue influence.

3

73206

SHALOM E. LAMM
Chairman

STATE OF New York )

COUNTY OF New York )    ss.:

On $8\backslash27$ 2001, before me, Shalom E. Lamm, who, being by me duly sworn,

did depose and say that he resides at 330 Elm Street, West Hempstead, New York 11552;

that he is the Chairman of Lion & Lamm Capital, LLC; and that he signed his name to

the attached Affidavit of Confession of Judgment by authority of the board of directors of

that limited liability company.

Signature of Notary

JONATHAN ZICH
Notary Public, State of New York
No. 31-4787443
Qualified in New York County
Commission Expires March 30, 19....
$7\backslash31\backslash02$

Notary Public or other Officer's Stamp or Title

4

73206

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------- x
ALH HOLDINGS LLC,                                        :
                                                        :
                            Plaintiff,                  :
                                                        :
                        - against -                     :      **AFFIDAVIT OF**
                                                        :      **CONFESSION OF**
                                                        :      **JUDGMENT**
                                                        :
LION ALH CAPITAL LLC,                                   :
                                                        :
                                                        :
                            Defendant.                  :
-------------------------------------------------------- x

STATE OF NEW YORK    )
                         ss.:
COUNTY OF NEW YORK   )

      SHALOM E. LAMM being duly sworn, deposes and says:

      1.    I am the Chairman of LION ALH CAPITAL LLC ("LION") and am duly authorized by LION and by the laws of the State of Delaware to make on LION's behalf the representations in this Affidavit of Confession of Judgment.

      2.    LION is a Delaware limited liability company whose principal office is located at 489 Fifth Avenue, New York, New York. On LION's behalf, I hereby consent to jurisdiction and venue, and authorize entry of judgment against LION in the Supreme Court of the State of New York, New York County, New York.

      3.    I hereby confess judgment on behalf of LION pursuant to CPLR 3218 in favor of ALH Holdings LLC ("Plaintiff") in the amount of $1,900,000, plus

interest and other costs and expenses and authorize Plaintiff, or Plaintiff's heirs,

representatives, assigns and successors in interest, to enter judgment in that amount

against LION only under the circumstances described below.

      4.      This confession of judgment is for a debt justly due to Plaintiff

pursuant to a certain Operating Agreement, Management Agreement and Promissory

Note, complete and accurate copies of which are appended hereto as Exhibits A, B and C,

respectively. The Management Agreement and Promissory Note provide that LION is

liable, jointly and severally with certain other persons, to the Plaintiff in the amount of

$1,900,000 plus interest on $1,400,000 thereof at the rate of 15% (and subject to

adjustment as set forth in the Promissory Note) from the date of the Management

Agreement and other costs and expenses set forth in the Promissory Note. LION

executed the Management Agreement and the Promissory Note as of July 1, 2001. LION

is therefore indebted to the Plaintiff in the amount of $1,900,000 plus interest and other

costs and expenses.

      5.      As of the date hereof, no portion of this obligation has been paid.

Judgment may be entered against LION for the full amount, or for such amount as

remains due and owing on the date this Affidavit of Confession of Judgment is filed with

the Court. In the event of any shortfall between amounts owing pursuant to the

Promissory Note and amounts collected pursuant to this Affidavit of Confession of

Judgment, LION agrees that nothing shall preclude Plaintiff from collecting such further

amounts as may be owing pursuant to the Promissory Note and related documents.

2

73061

      6.      This confession of judgment is not for the purpose of securing Plaintiff against a contingent liability, and is not an installment loan within the meaning of CPLR 3201.

      7.      LION has had legal advice by counsel of its own choosing in connection with this confession of judgment. There are no other agreements or understandings which in any way limit, condition or alter its obligations hereunder. On behalf of LION I understand, have considered and agree to each of the provisions hereof, and I am signing this Affidavit of Confession of Judgment without any coercion, force, pressure, or undue influence.

3

73061

SHALOM E. LAMM
Chairman

STATE OF Ne York )
                         ss.:
COUNTY OF New York )

On  8|27 2001, before me, Shalom E. Lamm, who, being by me duly sworn,

did depose and say that he resides at 330 Elm Street, West Hempstead, New York 11552;

that he is the Chairman of Lion ALH Capital LLC; and that he signed his name to the

attached Affidavit of Confession of Judgment by authority of the board of directors of

that limited liability company.

Signature of Notary

JONATHAN ZICH
Notary Public, State of New York
No. 31-4707443
Qualified in New York County
Commission Expires March 23, 19--
7-13-02

Notary Public or other Officer's Stamp or Title

4

73061

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ x
ALH HOLDINGS LLC,                                          :
                                                          :
                          Plaintiff,                       :
                                                          :
              - against -                                  :        **AFFIDAVIT OF**
                                                          :        **CONFESSION OF**
                                                          :        **JUDGMENT**
                                                          ;
SHALOM E. LAMM,                                            :
                                                          :
                                                          :
                                                          :
                          Defendant.                       :
------------------------------------------------------------ x

STATE OF NEW YORK    )
                              ss.:
COUNTY OF NEW YORK )

   SHALOM E. LAMM being duly sworn, deposes and says:

  1. I reside at 330 Elm Street, West Hempstead, New York 11552. I

hereby consent to jurisdiction and venue, and authorize entry of judgment against me in

the Supreme Court of the State of New York, New York County, New York.

  2. I hereby confess judgment pursuant to CPLR 3218 in favor of ALH

Holdings LLC ("Plaintiff") in the amount of $1,900,000, plus interest and other costs and

expenses and authorize Plaintiff, or Plaintiff's heirs, representatives, assigns and

successors in interest, to enter judgment in that amount against me only under the

circumstances described below.

73207

3.    This confession of judgment is for a debt justly due to Plaintiff pursuant to a certain Operating Agreement, Management Agreement and Promissory Note, complete and accurate copies of which are appended hereto as Exhibits A, B and C, respectively.  The Management Agreement and Promissory Note provide that I am liable, jointly and severally with certain other persons, to the Plaintiff in the amount of $1,900,000 plus interest on $1,400,000 thereof at the rate of 15% (and subject to adjustment as set forth in the Promissory Note) from the date of the Management Agreement and other costs and expenses set forth in the Promissory Note.  I executed the Management Agreement and the Promissory Note as of July 1, 2001.  I am therefore indebted to the Plaintiff in the amount of $1,900,000 plus interest and other costs and expenses.

4.    As of the date hereof, no portion of this obligation has been paid. Judgment may be entered against me for the full amount, or for such amount as remains due and owing on the date this Affidavit of Confession of Judgment is filed with the Court.  In the event of any shortfall between amounts owing pursuant to the Promissory Note and amounts collected pursuant to this Affidavit of Confession of Judgment, I agree that nothing shall preclude Plaintiff from collecting such further amounts as may be owing pursuant to the Promissory Note and related documents.

5.    This confession of judgment is not for the purpose of securing Plaintiff against a contingent liability, and is not an installment loan within the meaning of CPLR 3201.

2

73207

      6.    I have had legal advice by counsel of my own choosing in connection with this confession of judgment. There are no other agreements or understandings which in any way limit, condition or alter my obligations hereunder. I understand, have considered and agree to each of the provisions hereof, and I am signing this Affidavit of Confession of Judgment without any coercion, force, pressure, or undue influence.

3

73207

_____

SHALOM E. LAMM

STATE OF New York )
                          ss.:
COUNTY OF New York )

On 8/22/2001, before me, Shalom E. Lamm, personally appeared and

acknowledged to me that he executed the attached Affidavit of Confession of Judgment.

_____
Signature of Notary

JONATHAN ZICH
Notary Public, State of New York
No. 31-4767443
Qualified in New York County
Commission Expires March 31, 18...
7/31/02

Notary Public or other Officer's Stamp or Title

4

73207

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------- x
ALH HOLDINGS LLC,                                    :
                                                     :
                            Plaintiff,               :
                                                     :
            - against -                              :       **AFFIDAVIT OF**
                                                     :       **CONFESSION OF**
                                                     :       **JUDGMENT**
                                                     :
JONATHAN ZICH,                                       :
                                                     :
                                                     :
                                                     :
                            Defendant.               :
------------------------------------------------------------- x

STATE OF NEW YORK    )
                           ss.:
COUNTY OF NEW YORK )

      JONATHAN ZICH being duly sworn, deposes and says:

      1.    I reside at 180 Riverside Drive, New York, New York 10024. I hereby consent to jurisdiction and venue, and authorize entry of judgment against me in the Supreme Court of the State of New York, New York County, New York.

      2.    I hereby confess judgment pursuant to CPLR 3218 in favor of ALH Holdings LLC ("Plaintiff") in the amount of $1,900,000, plus interest and other costs and expenses and authorize Plaintiff, or Plaintiff's heirs, representatives, assigns and successors in interest, to enter judgment in that amount against me only under the circumstances described below.

73209

3.    This confession of judgment is for a debt justly due to Plaintiff pursuant to a certain Operating Agreement, Management Agreement and Promissory Note, complete and accurate copies of which are appended hereto as Exhibits A, B and C, respectively. The Management Agreement and Promissory Note provide that I am liable, jointly and severally with certain other persons, to the Plaintiff in the amount of $1,900,000 plus interest on $1,400,000 thereof at the rate of 15% (and subject to adjustment as set forth in the Promissory Note) from the date of the Management Agreement and other costs and expenses set forth in the Promissory Note. I executed the Management Agreement and the Promissory Note as of July 1, 2001. I am therefore indebted to the Plaintiff in the amount of $1,900,000 plus interest and other costs and expenses.

4.    As of the date hereof, no portion of this obligation has been paid. Judgment may be entered against me for the full amount, or for such amount as remains due and owing on the date this Affidavit of Confession of Judgment is filed with the Court. In the event of any shortfall between amounts owing pursuant to the Promissory Note and amounts collected pursuant to this Affidavit of Confession of Judgment, I agree that nothing shall preclude Plaintiff from collecting such further amounts as may be owing pursuant to the Promissory Note and related documents.

5.    This confession of judgment is not for the purpose of securing Plaintiff against a contingent liability, and is not an installment loan within the meaning of CPLR 3201.

2

73209

     6.     I have had legal advice by counsel of my own choosing in connection with this confession of judgment. There are no other agreements or understandings which in any way limit, condition or alter my obligations hereunder. I understand, have considered and agree to each of the provisions hereof, and I am signing this Affidavit of Confession of Judgment without any coercion, force, pressure, or undue influence.

3

73209

_____

JONATHAN ZICH


STATE OF New York )
                              ss.:
COUNTY OF New York )

On 9 22 2001, before me, Jonathan Zich, personally appeared and

acknowledged to me that he executed the attached Affidavit of Confession of Judgment.

Signature of Notary

RICHARD DODGE
Notary Public, State of New York
No. 01DO6049004
Qualified in New York County
Commission Expires Oct. 2, 20__


Notary Public or other Officer's Stamp or Title


4

73209

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x

ALH HOLDINGS LLC,                                   :

                            Plaintiff,              :

              - against -                           :        **AFFIDAVIT OF**
                                                    :        **CONFESSION OF**
                                                    :        **JUDGMENT**
                                                    :
JOHN D. HOURIHAN,                                   :
                                                    :
                                                    :
                                                    :
                            Defendant.              :

------------------------------------------------------------ x

STATE OF NEW YORK    )
                              ss.:
COUNTY OF NEW YORK )

          JOHN D. HOURIHAN being duly sworn, deposes and says:

          1.     I reside at 15 East Green Cay, Christiansted, St. Croix, USVI.  I

hereby consent to jurisdiction and venue, and authorize entry of judgment against me in

the Supreme Court of the State of New York, New York County, New York.

          2.     I hereby confess judgment pursuant to CPLR 3218 in favor of ALH

Holdings LLC ("Plaintiff") in the amount of $1,900,000, plus interest and other costs and

expenses and authorize Plaintiff, or Plaintiff's heirs, representatives, assigns and

successors in interest, to enter judgment in that amount against me only under the

circumstances described below.

3.    This confession of judgment is for a debt justly due to Plaintiff
pursuant to a certain Operating Agreement, Management Agreement and Promissory
Note, complete and accurate copies of which are appended hereto as Exhibits A, B and C,
respectively. The Management Agreement and Promissory Note provide that I am liable,
jointly and severally with certain other persons, to the Plaintiff in the amount of
$1,900,000 plus interest on $1,400,000 thereof at the rate of 15% (and subject to
adjustment as set forth in the Promissory Note) from the date of the Management
Agreement and other costs and expenses set forth in the Promissory Note. I executed the
Management Agreement and the Promissory Note as of July 1, 2001. I am therefore
indebted to the Plaintiff in the amount of $1,900,000 plus interest and other costs and
expenses.

4.    As of the date hereof, no portion of this obligation has been paid.
Judgment may be entered against me for the full amount, or for such amount as remains
due and owing on the date this Affidavit of Confession of Judgment is filed with the
Court. In the event of any shortfall between amounts owing pursuant to the Promissory
Note and amounts collected pursuant to this Affidavit of Confession of Judgment, I agree
that nothing shall preclude Plaintiff from collecting such further amounts as may be
owing pursuant to the Promissory Note and related documents.

5.    This confession of judgment is not for the purpose of securing
Plaintiff against a contingent liability, and is not an installment loan within the meaning
of CPLR 3201.

2

73208

6.    I have had legal advice by counsel of my own choosing in connection with this confession of judgment.  There are no other agreements or understandings which in any way limit, condition or alter my obligations hereunder.  I understand, have considered and agree to each of the provisions hereof, and I am signing this Affidavit of Confession of Judgment without any coercion, force, pressure, or undue influence.

3

73208

_____
JOHN D. HOURIHAN


STATE OF New York    )
                              ss.:
COUNTY OF New York

On 4 27 2001, before me, John D. Hourihan, personally appeared and

acknowledged to me that he executed the attached Affidavit of Confession of Judgment.


Signature of Notary

RICHARD DODGE
Notary Public, State of New York
No. 01DO6048004
Qualified in New York County
Commission Expires Oct. 2, 20_02_


Notary Public or other Officer's Stamp or Title


4

73208

# EXHIBIT GG

## Pamela Jarvis

| | |
|---|---|
| **From:** | Pamela Jarvis |
| **Sent:** | Wednesday, August 11, 2004 3:11 PM |
| **To:** | 'Isaac M. Neuberger' |
| **Cc:** | Thomas M. Wood; avie@arenson.co.il; bjj@jesselson.com; mgj@attglobal.net; konig@skynet.be; starjewelers@aol.com; mfrankel@iaac.com |

**Subject:** RE:

Dear Isaac:

Your communications are becoming increasingly shrill in tone and decreasingly substantive in content. Rather than responding to your factual inaccuracies or your mostly repetitive and entirely unfounded threats and accusations, I will try to summarize where, as a practical matter, this matter now stands:

1. The Class B investors have declined Mr. Buchler's offer to speak with Mr. Arenson this week.

2. The Class B investors are now undecided as to whether they want to proceed with the conference call previously scheduled for noon New York time on Wednesday, August 25.

3, The Class B investors have no business proposal to make as an alternative to the Levitt offer for MHI.

4. The parties are 180 degrees apart as far as the factual and legal analysis of past events and circumstances is concerned.

5. Shamrock remains willing to discuss a transactional resolution that would address the parties' relationship going forward, but not one that is linked to your threats and accusations. If the Class B investors are willing to discuss the former separately from the latter, Shamrock believes that it should be possible for the parties to reach a business agreement. If the Class B investors insist that any discussion of a business resolution be premised on Shamrock conceding some kind of wrongdoing, then in Shamrock's view, the parties have no basis for a constructive discussion.

Sincerely,

Pamela Jarvis

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Monday, August 09, 2004 6:06 PM
**To:** Pamela Jarvis
**Cc:** Thomas M. Wood; avie@arenson.co.il; bjj@jesselson.com; mgj@attglobal.net; konig@skynet.be; starjewelers@aol.com; mfrankel@iaac.com
**Subject:** RE:

Thanks for the notices on the e-mails, my IT guys are trying to figure it out.

Please see responses in context:

**From:** Pamela Jarvis [mailto:pjarvis@josephnyc.com]
**Sent:** Monday, August 09, 2004 2:19 PM
**To:** Isaac M. Neuberger
**Cc:** Thomas M. Wood; avie@arenson.co.il; bjj@jesselson.com; mgj@attglobal.net; konig@skynet.be; starjewelers@aol.com; mfrankel@laac.com
**Subject:** RE:

Dear Isaac:

I will forward to you separately the "returned mail" messages I received Friday evening. Perhaps they will help your tech people identify where the glitch was so that it won't recur.

The attachments to your August 8, 2004 email are by no means "the extent of" Mr. Arenson's communications with ALH regarding MHI. There have been many communications, both orally and in writing, over many months. It is my understanding that Mr. Arenson has been kept up-to-date, but as always, if he desires additional information, he need only ask.

*IMN- YOUR UNDERSTANDING IS IN ERROR. WE HAVE CAREFULLY MONITORED ALL OF THE COMMUNICATIONS FROM SHAMROCK.HE HAS GONE ON RECORD OPPOSING ALL THAT WE ARE COMPLAINING ABOUT....IF THIS IS SHAMROCK'S DEFENSE,IT IS VERY WEAK.SINCE SHAMROCK HAS MADE IT CLEAR TO MR. ARENSON THAT SHAMROCK HAD ITS OWN AGENDA, AND WE WARNED THEM OF THE OUTCOME , WHAT MORE COULD ANYONE HAVE EXPECTED OF HIM?*

Your comment that "none of the other Bs" knew certain information known to Mr. Arenson suggests that there may be a communication gap of some kind between your clients, but if that is so, it is hardly something that can be laid at Shamrock's door.

*IMN- THAT RELATED ONLY TO THE ORIGINAL LAMM/ZICH /HOURIHAN AGREEMENTS.THEY ARE IRRELEVANT TO OUR COMPLAINTS.PLEASE DO NOT TAKE THAT OUT OF CONTEXT.*

Mr. Buchler is available to speak with Mr. Arenson this coming week. (My offer to "coordinate" means nothing more than acting as conduit for scheduling purposes, so that a mutually convenient time can be arranged -- I trust that you see nothing sinister in that.)

*IMN- THE EXCHANGE WE HAVE HAD IS VERY SINISTER. ALH IS BURNING AND BUCHLER IS VACATIONING. UNBELIEVABLE. I TRUST THAT YOU HAVE TOLD THESE ALH "CONTROL" DIRECTORS THAT THEY INDEPENDENT EXPOSURE, ASIDE FROM THEIR ROLES IN SHAMROCK?*

As previously stated, Shamrock and I are also available for a conference call at noon (U.S. east coast time) on August 25, which is a date and time that you suggested. If your clients do not wish to communicate with Shamrock, that is their choice, but in that event I think it ill-becomes them to complain that Shamrock has been incommunicative.

*IMN- IMAGINE THAT. WE WRITE A LETTER ON JULY 14, OFFER TO MEET AND ALL SHAMROCK CAN MUSTER IS A CALL ON AUGUST 25, AT A TIME WHEN MHI IS SO VERY CRITICAL. SOME OBJECTIVE FINDER OF THE FACTS WILL DETERMINE WHETHER OR NOT SHAMROCK HAS BEEN*

*"INCOMMUNICATIVE"*

As I have repeatedly explained to you, I do not think the currently planned conference call is a constructive time to discuss what you refer to as "Shamrock's overall culpability."

### *IMN- WHY NOT?  MY CLIENTS HAVE INVESTED THEIR OWN MONEY, NOT "OPM", WHY ARE GOLD, KRIEGER HIDING? WE KNOW THAT BUCHLER IS VACATIONING, ARE THE OTHERS VACATIONING AS WELL?*

However, if you would like to have a lawyer-to-lawyer discussion of this subject, please contact me to set a time for a call this week.

### *IMN- I WOULD BE HAPPY TO DO SO, IF YOU HAD SOME AUTHORITY TO DEAL WITH THE $7.5 MM+/- THAT MY CLIENTS HAVE INVESTED. DO YOU?*

As near as I can tell, the crux of your clients' "grievances" (to use your word) is that certain decisions with respect to ALH were made without their "consent."  Under ALH's Operating Agreement, the Class B Members have never had more than one of the five representatives on ALH's board, and board action by ALH has never required a unanimous vote.  Your clients knowingly chose to invest in ALH on these terms , i.e., on terms that expressly gave ALH the right to act without the Class Bs' "consent."

### *IMN- YOU CONVENIENTLY SEEK TO IGNORE THAT SHAMROCK'S REASON FOR THESE DECISIONS HAVE NOTHING TO DO WITH THE AFFAIRS OF ALH, BUT THAT SHAMROCK WAS SPENDING TOO MUCH MANAGEMENT TIME,.....IS THAT WHAT YOU FEEL THAT THE B's BOUGHT INTO? DID THE B'S EVER EXPECT SHAMROCK TO TAKE OPERATING CONTROL? DID THE B's EVER EXPECT SHAMROCK TO SELL OFF PROFITABLE DIVISIONS AND DESTROY THE ENTIRE BUSINESS PLAN THAT THEY HAD BOUGHT INTO? JUST REMEMBER, THAT IN THE PERIOD IN QUESTION, HOMEBUILDING WAS A REAL WINNER, NOT AT ALH.*

Much of what you complain of was in fact consented to by Mr. Arenson as Class B representative, but even if that were not so, I am unable to see that your clients have any basis whatsoever for a legal claim based on absence of their "consent."

### *IMN- IF YOU REALLY BELIEVE THIS THEORY, THEN WHAT ON EARTH COULD WE POSSIBLY TALK ABOUT.? A JUDGE WILL HAVE TO AGREE WITH YOU,BEFORE WE GO AWAY.*

### *I THINK THAT TO THE CONTRARY, THIS IS A VERY STRONG CASE AND SO LONG AS YOU SEEK TO MINIMIZE IT, NO QUIET PROGRESS WILL BE MADE.*

Moreover, it is undisputed that ALH originally sought a buyer for the entire company, but after many months of effort by the company's investment bankers, Jolson Merchant Partners (whose selection was approved by Mr. Arenson), no such buyer was found.

***IMN- HERE AGAIN YOU ARE WRONG. MDC, ONE OF THE NATIONS LARGEST BUILDERS, WALKED AWAY, AS THEY COULD NOT DEAL WITH SHAMROCK. I THINK, WE WILL FIND THAT LENNAR HAD A SIMILAR VIEW.***

You have contended that the sale process should have been handled differently, but as you know, this is a most matter of business judgment that likewise cannot form the basis of a legal claim against Shamrock.

***IMN- FOR ALL OF THE REASON THAT I HAVE GIVEN YOU, THIS IS NOT A BUSINESS JUDGMENT CASE.***

For these and other reasons, I believe that your "grievances" are wholly without merit.

***IMN- THEN WHY SHOULD WE CONFER?***

In any context, I think it would be a waste of both parties' time and resources to discuss -- let alone litigate -- these issues, but I am willing discuss them with you (and your litigator, Mr. Wood) if you wish.

***IMN- TOWARDS WHAT END?***

Perhaps we might also discuss whether the "course[s] of action" your clients are considering could expose them to liability for breach of fiduciary duty, e.g., if they disrupt a transaction beneficial to ALH and its various constituencies.

***IMN- IS THAT A THREAT? ANOTHER PREDICATE ACT?***

The fact that Shamrock does not want to waste its own or your clients' time and resources on these meritless "grievances" in no way supports your accusations that "ALH has been left adrift," or that "vacation schedules . . . take precedence over the affairs of ALH."

***IMN- SIMPLY STATED...BALONEY. SHAMROCK, ONLY WANTED TO RECOVER ITS LOANS, IT HAD WRITTEN OFF THE EQUITY AND INTENDED TO  DRAG ALONG THE Bs.***

***YOU SEEM TO HAVE CAUGHT UP VERY WELL IN THIS REVISIONIST APPROACH TO WHAT HAPPENED...HOW IN THE WORLD CAN THEY EXPLAIN MEMPHIS?***
Nothing of the kind has occurred or is occurring. ALH's current and future needs are being attended to on an ongoing basis (with no help from your clients, as near as I can tell).

***IMN- GREAT---WE ARE INSOLVENT AND HAVE BEEN...IS THAT THE ATTENTION THAT THE Bs BOUGHT INTO?***

Your repeated attempts to conflate the present business situation with your desire to find fault with past events are pointless and will not succeed.

*IMN- THIS IS ABOUT THE 5TH TIME IN THIS E-MAIL THAT YOU HAVE DISMISSED OUR POSITION?
WHAT COULD WE POSSIBLY TALK ABOUT? IF THIS CASE IS BROUGHT IN DELAWARE,NORTH
CAROLINA OR ELSEWHERE OTHER THAN NYC, WILL YOU PARTICIPATE?*

You seem to be suggesting that what I "refer to [as] confessions of judgment" are in fact
something else. As you will see from the July 2001 settlement documents, they include
what are, on their face, confessions of judgment . Mr. Arenson was both fully informed of
and consented to the terms of the settlement, which are set forth in great detail in the
documents he approved.

## *IMN- HE APPROVED NOTHING. THIS ENTIRE MESS WILL BE A MAJOR ISSUE
DEALING WITH FRIED FRANK*

 Do you believe that ALH does not have a responsibility to seek to  collect the amounts
owed, and if so, what is the basis of this belief?

## *IMN- LAMM AND ZICH ARE WELL REPRESENTED. THEY WILL DEAL WITH THIS
ON THEIR OWN. THE ONLY RELATIONSHIP WE HAVE IS THAT THEIR INTERESTS
IN ALH HAVE BEEN SIMILARLY DESTROYED.*

 Finally, I believe you are mistaken in your assertion that Mr. Zich obtained the most
recent extension from Swiss Re; as far as I know, that extension was obtained by Mr.
Buchler, Mr. Krieger and Mr. Lanius.

*IMN- WRONG, AGAIN*

Sincerely,

Pamela Jarvis

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Sunday, August 08, 2004 11:43 AM
**To:** Pamela Jarvis
**Cc:** Thomas M. Wood; avie@arenson.co.il; bjj@jesselson.com; mgj@attglobal.net;
konig@skynet.be; starjewelers@aol.com; mfrankel@iaac.com
**Subject:**

I am unable to explain the difficulties you experienced on Friday evening.

Your fax/e-mail seeks to limit the agenda of the proposed phone call. You have suggested that Mr.
Arenson is fully conversant with MHI and ALH. The attached e-mails are the extent of his
communication.

Shamrock's unwillingness to address the the Bs' grievances or due to various vacation schedules to
defer even a phone call is much akin to a game of russian roulette and I daresay that the gun being
used has live ammunition.

ALH has been left adrift, with a part time consultant-CFO who tries his best to deal with the Banks,
who I expect will prove to be  a key and material witness in proving the Bs' allegations. While it is
very generous of Mr. Buchler to "make time" for a call and that it be without lawyers, other than you
will "coordinate" is just another "nail", when in my view, through prompt and current discussions, a

great deal of aggravation could be avoided.

In light of the Lanius reports, there is great urgency to the issues and I assure that the Bs, if they even agree to proceed with a call, when Shamrock deigns one should occur, will not be able to separate the MHI issues from Shamrock's overall culpability.If your statement that Shamrock does "not intend to spend time" on what you refer to as "historical gripes", then personally I see no purpose in waiting for a call and just doing what must be done.Over the next three weeks, while Shamrock vacations, the Bs will decide their course of action and there may or may not be a conference call.

The Lamm and Zich issues are very much tied to ALH; the factual background that led to what you refer to "confessions of judgment" are of further concern to the Bs; while Mr. Arenson knew whatever it was that Shamrock told him happened, at that time, none of the other Bs, knew about it and to the contrary, it was Zich that initiated the relationship with Swiss Re and it was Zich that obtained the last extension. So long as the vacation schedules loom so large and take precedence over the affairs of ALH, the worst the situation is.

**********************************
CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************


**********************************
CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************

# EXHIBIT H