[MANAGEMENT PERSONS LETTERHEAD]

July 1, 2001

ALH Holdings LLC
489 Fifth Avenue
New York, NY 10017

     Re:   Governance Matters

Gentlemen:

     Reference is made to the Agreement (the "Agreement"), dated as of July 1, 2001, by and among Lion ALH Capital LLC, a Delaware limited liability company (the "Manager"), Lion & Lamm Capital, LLC, a New York limited liability company ("Lion Capital"), Shalom E. Lamm ("Lamm"), Jonathan Zich ("Zich"), John D. Hourihan ("Hourihan") (the Manager, Lion Capital, Lamm, Zich and Hourihan collectively being referred to herein as the "Management Persons") and ALH Holdings LLC, a Delaware limited liability company ("ALH"). All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Operating Agreement of ALH , dated as of June 12, 1998, among the Manager and the Members party thereto, as amended as of March 15, 1999 (the "Operating Agreement").

     In addition to the terms set forth the in the Agreement, by executing this letter agreement (the "Letter Agreement"), the Management Persons, jointly and severally, and ALH hereby agree as follows:

     1.  Board Representation.  Notwithstanding any purported or actual Operational Default that has or may have occurred on or prior to the Closing (as defined in the Agreement) that may entitle the Class A Members to designate two Class D Representatives to the Supervisory Board pursuant to Sections 6.1(b) and 6.2(b)(iii) of the Operating Agreement, the Class D Members shall be entitled, and from and after the date of any such actual or purported Operational Default shall have been entitled, to designate such Class D Representatives; provided, however, that as of the Closing, one of the two Class D Representatives on the Supervisory Board (and each person designated to replace such Class D Representative) shall be selected by the Class D Members (acting by Class D Vote) and consented to by the Class A Members (acting by Class A Vote) in their sole discretion and the Class D Members shall not cause or permit such Class D Representative to be removed without the express written consent of the Class A Members (acting by Class A Vote); and provided, further, nothing set forth in this Section 1 shall limit the rights of the Class A Members to remove and replace the Class D Representatives and designate Representatives to serve on the Supervisory Board under Sections 6.1(b) or 6.2(b)(iii) of the Operating Agreement in connection with any Operational Default that occurs at any time from and after the Closing.

     2.  Certain Actions.  Without limiting any of the rights of the Supervisory Board under the Operating Agreement, no Management Person, without the express written consent of the Supervisory Board (which consent shall include the approval of the Class A Representatives), shall (x) fail to take any action which action, if taken by any Management Person(s), could have

prevented or could reasonably be expected to prevent the occurrence of any of the following or (y) take any action that shall cause or result in any of the following:

a.    The termination of John Lagaurdia "Without Cause" (as defined in the Employment Agreement, (the "Employment Agreement") dated as of July 1, 2000, between ALH II, Inc., a Delaware corporation ("ALH II"), and John Laguardia), prior to the termination of the Employment Agreement.

b.    Manager shall cease to own all of the Class D Membership Interests and voting interests of the Class D Members in ALH or Manager's Class D Membership Interest in ALH shall be decreased or diluted.

c.    Manager shall cease to be entitled to designate two representatives to the Supervisory Board of ALH.

d.    ALH shall cease to be the sole owner of all equity interests in ALH II.

e.    Lamm, Zich or Hourihan shall cease to be members of the board of directors of ALH II or shall cease to hold at least 51% of the voting interests of the board of directors of ALH II.

f.    The liquidation or dissolution of ALH II.

g.    The sale in the aggregate between July 1, 2000 and June 30, 2004 of assets of ALH II or the operating subsidiaries of ALH II, the value of which exceeds fifty (50%) percent of the value of all assets of ALH II at the time of sale.

h.    Lamm, Zich, Hourihan and/or Maureen Raimond shall cease for any reason to constitute a majority of the board of ALH II.

3.    **Additional Covenants.**

(a) Each of Lamm, Zich and Hourihan covenants and agrees that, in his capacity as a member of the board of directors of any of the Subsidiaries and notwithstanding any less restrictive requirements set forth in the articles of incorporation, by-laws or other charter documents of any such Subsidiary, he shall not (i) cause or permit the board of directors of any such Subsidiary to take any action without a meeting of the board of directors of such Subsidiary unless such action is taken by the unanimous written consent of the members of the board of directors of such Subsidiary, or (ii) cause or permit any meeting of such board of directors to be held without at least 48 hours prior written notice to each member of such board of directors.

(b) Each of the Management Person agrees that it shall not, and shall not take any action to cause, the articles of incorporation, by-laws or other charter documents of any Subsidiary to be amended without the written consent of the Class A Members (acting by Class A Vote).

2

72526

4. Governing Law. This Letter Agreement shall be governed by and construed both as to validity and enforceability in accordance with the laws of the State of New York, without regard to the conflicts of law provisions thereof that could cause the law of any state other than the State of New York to be applied.

5. Submission to Jurisdiction; Consent to Service of Process; Attorney's Fees. With respect to any claim arising out of this Letter Agreement, the Agreement or any of the Management Persons' Deliveries or any other document or agreement entered into in connection herewith or therewith, each Management Person irrevocably submits to the exclusive jurisdiction of the state and federal courts located in the City of New York, New York and waives any objection which it may have at any time to the laying of venue of any suit, action or proceeding arising out of, or relating to, this Letter Agreement, the Agreement or any of the Management Persons' Deliveries or any other document or agreement entered into in connection herewith or therewith brought in any such court, irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum and further irrevocably waives the right to object, with respect to such suit, action or proceeding brought in any such court, that such court does not have jurisdiction over such party; provided, however, that nothing in this Section 4 shall be deemed to preclude ALH from bringing an action or proceeding in respect of this Letter Agreement, the Agreement or any of the Management Persons' Deliveries or any other document or agreement entered into in connection herewith or therewith in any other jurisdiction. Each Management Person agrees that service of process upon it in any suit, action or proceeding brought by ALH in any jurisdiction shall be deemed in every respect effective service of process upon it if given in the manner set forth in Section 8.13 of the Agreement. Each party hereto agrees that in any suit, action or proceeding arising out of or relating to this Letter Agreement, the Agreement or any of the Management Persons' Deliveries or any other document or agreement entered into in connection herewith or therewith, ALH will be entitled to recover from each Management Person all costs and expenses, including reasonable attorney's fees and costs, incurred by ALH in connection with such suit, action or proceeding.

6. Waiver of Jury Trial. **EACH MANAGEMENT PERSON WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE CONNECTED WITH, RELATED TO, OR INCIDENTAL TO THIS LETTER AGREEMENT OR THE RELATIONSHIP ESTABLISHED BETWEEN ALH AND EACH MANAGEMENT PERSON IN CONNECTION WITH THIS LETTER AGREEMENT. ALH RETAINS, IN ITS SOLE AND ABSOLUTE DISCRETION, THE RIGHT TO DEMAND A TRIAL BY JURY.**

7. Severability. If any provision of this Letter Agreement, or any application thereof to any circumstances, is determined to be invalid, in whole or in part, such provision or application shall to that extent be severable and shall not affect other provisions or applications of this Letter Agreement.

8. Headings. The headings to the sections of this Letter Agreement are inserted for convenience only and shall not constitute a part, or affect in any way the meaning or interpretation, of this Letter Agreement.

3

72526

9. Successor and Assigns. This Letter Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns; provided, that no Management Person may assign all or any portion of this Letter Agreement or any rights hereunder or delegate any obligations hereunder without the prior written consent of ALH and that ALH may assign any portion of this Letter Agreement or any rights hereunder without the prior written consent of any of the Management Persons.

10. Injunctive Relief. Each Management Person acknowledges that remedies at law, including monetary damage awards, for any breach by any Management Person of this Letter Agreement would be inadequate and that the ALH shall be entitled to seek injunctive relief against the Management Persons in the event of any such breach. ALH shall be entitled to exercise such remedies cumulatively or in conjunction with all other rights and remedies provided herein, by law or otherwise.

11. Counterparts. This Letter Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which shall be deemed to be one and the same agreement.

4

72526

If the foregoing sets forth your understanding of our agreement, please sign in the space provided below.

Very Truly Yours,

LION ALH CAPITAL, LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

LION & LAMM CAPITAL, LLC, a New York limited liability company

By: _____
Name: __SHALOM E. LAMM__
Title: __Pres'd't__

SHALOM E. LAMM, an individual

_____
Shalom E. Lamm

JONATHAN ZICH, an individual

_____
Jonathan Zich

JOHN D. HOURIHAN, an individual

_____
John D. Hourihan

72526

If the foregoing sets forth your understanding of our agreement, please sign in the space provided below.

Very Truly Yours,

LION ALH CAPITAL, LLC, a Delaware limited liability company

By: _____
Name: _____
Title: _____

LION & LAMM CAPITAL, LLC, a New York limited liability company

By: _____
Name: _____
Title: _____

SHALOM E. LAMM, an individual

_____
            Shalom E. Lamm

JONATHAN ZICH, an individual

_____
            Jonathan Zich

JOHN D. HOURIHAN, an individual

_____
            John D. Hourihan

72526

Agreed and Accepted:

ALH HOLDINGS LLC

By: _____

Name: _____

Title: _____

With respect to paragraph 1 only, acknowledged and agreed to on behalf of the Class A Members (acting by Class A Vote):

CLASS A REPRESENTATIVE

By: _____

Name: _____

Title: _____

72526

# EXHIBIT HH

## Pamela Jarvis

**From:** Pamela Jarvis

**Sent:** Monday, August 23, 2004 8:15 PM

**To:** 'Isaac M. Neuberger'

**Cc:** Avie Arenson (Avie Arenson); mgj@attglobal.net; Eugene I. Krieger (Gene Krieger); George J. Buchler; konig@skynet.be; bjj@jesselson.com; starjewelers@aol.com; mfrankel@iaac.com; Thomas M. Wood; 'wrlanius@bellsouth.com'; Gregory P. Joseph

**Subject:** RE: ALH Holdings and Swiss Re

Dear Isaac:

At your suggestion over two weeks ago, the parties scheduled the conference call for noon NY time on Wednesday, August 25 (see, e.g., our exchange of emails on August 6). How is it that Mr. Arenson has suddenly become unavailable on Wednesday? I believe it will be possible for us to rearrange our schedules to accommodate your request to move the call to Thursday, August 26, but are you still proposing 11 am NY time (first raised in your email yesterday) or noon NY time (the time we agreed)? Please advise ASAP.

Please provide the names of everyone you plan to have on the call.

It is fine with us if Mr. Lanius joins the call at the outset to report regarding the meeting with Levitt and Swiss Re, although I believe that Mr. Arenson already received a report on this last week. In any event, I agree with you that Mr. Lanius should disconnect from the call after that.

Please confirm that we remain in agreement that, as you put it in your August 6 email, "any conference call will be in the nature of settlement discussions and will be without prejudice and 'off the record' and not useable in any context."

Sincerely,
Pamela Jarvis

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Sunday, August 22, 2004 3:51 PM
**To:** William R. Lanius; Gregory P. Joseph; Pamela Jarvis
**Cc:** Avie Arenson (Avie Arenson); mgj@attglobal.net; Eugene I. Krieger (Gene Krieger); George J. Buchler; konig@skynet.be; bjj@jesselson.com; starjewelers@aol.com; mfrankel@iaac.com; Thomas M. Wood
**Subject:** RE: ALH Holdings and Swiss Re

Avie will be traveling on Weds. as well.

does Thursday at the same time work for all?

please let me know.

**From:** William R. Lanius [mailto:wrlanius@bellsouth.net]
**Sent:** Sunday, August 22, 2004 11:15 AM
**To:** Isaac M. Neuberger
**Cc:** Shalom Lamm; Avie Arenson (Avie Arenson); Bruce Stein (Bruce Stein); Eugene I. Krieger (Gene Krieger); George J. Buchler
**Subject:** RE: ALH Holdings and Swiss Re

Isaac ...... Sorry but I will not be available this Wed. (or Mon-Tues) because of previously scheduled meetings and travel plans. I can be available on Thursday at most any time that is convenient for you. Please let me know and I will be glad to help. Thx...... WRL

Bill Lanius
e-mail: wrlanius@bellsouth.net
phone: 904-219-8460
fax: 904-279-9556

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Sunday, August 22, 2004 6:04 AM
**To:** Gregory P. Joseph; Pamela Jarvis
**Cc:** avie@arenson.co.il; konig@skynet.be; mgj@attglobal.net; bjj@jesselson.com; starjewelers@aol.com; mfrankel@iaac.com; Thomas M. Wood; William R. Lanius
**Subject:** ALH Holdings and Swiss Re

The conference call is now scheduled for Wednesday August 25 at:

11 AM- USA EAST COAST
8 AM USA WEST COAST
4 PM- LONDON
5 PM- WEST. EUROPE
6 PM- ISRAEL

I WILL BE IN LONDON. THE DIAL IN NUMBERS ARE:

DOMESTIC USA- 1-800-213-0326

FOREIGN ACCESS- 1-913-312-4152

PASS CODE 810433

I WILL BE ON MY GSM...IF ANYONE HAS DIFFICULTY WITH THE ACCESS, PLEASE CALL ME AT 1-443-570-5135...THIS IS A USA BASED GSM

I ASSUME THAT MR. JOSEPH OR M'S JARVIS WILL ADVISE THE SHAMROCK FOLKS. I HAVE ASKED BILL LANIUS TO BE ON THE CALL AND REPORT ON WHAT TRANSPIRED AT THE MEETING WITH LEVITT AND SWISS RE. AFTERWARDS HE CAN DISCONNECT.

***********************************

CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this

communication or its contents is strictly prohibited. If you have received this
communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************

**********************************
CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin &
Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended
recipient and may constitute a communication protected by the attorney-client privilege. If you are
not the intended recipient or a person responsible for delivering it to the intended recipient, you
are hereby notified that any use, distribution, or copying of this communication or its contents is
strictly prohibited. If you have received this communication in error, please notify us immediately
by telephone at (410) 332-8550.
**********************************

# EXHIBIT I

WRITTEN CONSENT OF
THE CLASS D MEMBERS
OF
ALH HOLDINGS LLC
(a Delaware limited liability company)

August 16, 2001

Pursuant to the provisions contained in Title 6, Sections 18-106 and 18-302(d) of the Delaware Limited Liability Company Act and that certain Operating Agreement (the "Operating Agreement") of ALH HOLDINGS LLC, a Delaware limited liability company (the "Company"), dated as of June 12, 1998, as amended, the undersigned, holding all of the Class D Membership Interests of the Company, hereby consents to the adoption of the following resolutions:

ELECTION OF REPRESENTATIVE

WHEREAS, pursuant to Section 6.2(b) of the Operating Agreement, the Class D Members have the right to designate up to two Representatives to serve on the Supervisory Board of the Company.

WHEREAS, Jonathan Zich has resigned as a Class D Representative from the Supervisory Board of the Company.

WHEREAS, the Class D Members (acting by Class D Vote) deem it to be in their best interests and in the best interests of the Company to elect Bruce Stein to replace Jonathan Zich as a Class D Representative of the Supervisory Board of the Company.

WHEREAS, the Class D Members (acting by Class D Vote) deem it in their best interests and in the best interests of the Company not to cause or permit Bruce Stein, or his successor, to be removed from the Supervisory Board of ALH without the express written consent of the Class A Members (acting by Class A Vote).

NOW, THEREFORE, BE IT RESOLVED, that Bruce Stein is hereby nominated and elected, effective as of the date hereof, as the Class D Representative of the Supervisory Board of the Company.

RESOLVED, that Bruce Stein be, and hereby is, elected to serve as the Class D Representative of the Supervisory Board of the Company to serve for the ensuing year and until his successor shall have been duly elected and shall have qualified.

73134

RESOLVED, that the Class D Members will not cause or permit Bruce Stein, or his successor, to be removed from the Supervisory Board of the Company without the express written consent of the Class A Members (acting by Class A Vote).

2

73134

IN WITNESS WHEREOF, the undersigned Class D Member of the Company has executed this Written Consent as of the date set forth above, thereby agreeing that the above resolutions shall be of the same force and effect as if regularly adopted at a meeting of the Class D Member held upon due notice.

LION ALH CAPITAL LLC, as the holder of 100% of the Class D Membership Interest

By: _____

Name: SHALOM S. LAMM

Title: MANAGING MEMBER

73134



## LION & LAMM CAPITAL, LLC

September 20, 2001

A. Arenson, Ltd.
5 Hashita Street
P.O. Box 3566
Caesarea Industrial Park  38900
Israel
Via Federal Express

D.A. Gardens Limited
c/o Fimanor
Seefeldstrase 45
Zurich 8008
Switzerland
Via Federal Express

J12 ALH, Associates LLC
450 Park Avenue
Suite 2603
New York, New York  10022
Via Federal Express

SELK, LLC
489 Fifth Avenue
28ᵗʰ Floor
New York, New York  10017
By Hand

Laurel Equity Group
c/o Y. Frankel
3142 Bedford Avenue
Brooklyn, New York  11210
Via Federal Express

Shamrock Holdings of California, Inc.
4444 West Lakeside Drive
Burbank, California  91505
Via Federal Express

Landmark Equity Investors
10 Windy Ridge
Cold Spring, New York  10516
Via Federal Express

Re:    Operating Agreement dated as of June 12, 1998
        (the "Operating Agreement") of ALH Holdings, LLC ("ALH")

Ladies and Gentlemen:

Please be advised that, effective immediately, in accordance with Section 6.2(a) of the
Operating Agreement of ALH, notice is hereby given that the Class D Representative
hereby replaces Jonathan Zich as one of its Representatives on the Supervisory Board
with Bruce Stein. Shalom E. Lamm remains as the other Class D Representative to the
Supervisory Board.

September 20, 2001
Page Two

Capitalized terms set forth in this notice, unless otherwise expressly defined herein, shall
have the same meaning as ascribed to them as in the Operating Agreement.

Very truly yours,

Lion ALH Capital, LLC

By: _____

JZ:rd

# EXHIBIT II

## Pamela Jarvis

| | |
|---|---|
| **From:** | Isaac M. Neuberger [IMN@NQGRG.com] |
| **Sent:** | Monday, August 23, 2004 8:24 PM |
| **To:** | Pamela Jarvis |
| **Cc:** | Avie Arenson (Avie Arenson); mgj@attglobal.net; Eugene I. Krieger (Gene Krieger); George J. Buchler; konig@skynet.be; bjj@jesselson.com; starjewelers@aol.com; mfrankel@iaac.com; Thomas M. Wood; wrlanius@bellsouth.com; Gregory P. Joseph |

**Subject:** RE: ALH Holdings and Swiss Re

_mr. arenson advised me today that he will be on vacation is Switzerland, but would be able to participate._
..

### PLEASE SEE RESPONSES IN CONTEXT

**From:** Pamela Jarvis [mailto:pjarvis@josephnyc.com]
**Sent:** Monday, August 23, 2004 8:15 PM
**To:** Isaac M. Neuberger
**Cc:** Avie Arenson (Avie Arenson); mgj@attglobal.net; Eugene I. Krieger (Gene Krieger); George J. Buchler; konig@skynet.be; bjj@jesselson.com; starjewelers@aol.com; mfrankel@iaac.com; Thomas M. Wood; wrlanius@bellsouth.com; Gregory P. Joseph
**Subject:** RE: ALH Holdings and Swiss Re

Dear Isaac:

At your suggestion over two weeks ago, the parties scheduled the conference call for noon NY time on Wednesday, August 25 (see, e.g., our exchange of emails on August 6). How is it that Mr. Arenson has suddenly become unavailable on Wednesday?

_IMN- I HAVE NO IDEA. I LEARNT IT AS YOU DID. IT IS ONE OF THE ISSUES ONE FACES WHEN DEALING WITH MULTIPLE TIME ZONES. HE WILL BE IN THE AIR, WHEN IT IS MORNING IN LA. AS NOTED, HE WILL TAKE TIME OUT OF HIS VACATION ON THURSDAY._

I believe it will be possible for us to rearrange our schedules to accommodate your request to move the call to Thursday, August 26, but are you still proposing 11 am NY time (first raised in your email yesterday) or noon NY time (the time we agreed)?

**IMN- 11 AM IS 6 HOURS AHEAD FOR EUROPE AND 7 FOR ISRAEL. ..IS THAT Ok?**

8/8/2005

Please advise ASAP.

Please provide the names of everyone you plan to have on the call.

**IMN- THE Bs LISTED ABOVE,PLUS MYSELF AND SAM WOOD...AND LANIUS**

It is fine with us if Mr. Lanius joins the call at the outset to report regarding the meeting with Levitt and Swiss Re, although I believe that Mr. Arenson already received a report on this last week.

### *IMN- HE DID NOT YET RECEIVE IT. IF YOU HAVE A COPY, WOULD YOU PLEASE SEND IT TO US.*

In any event, I agree with you that Mr. Lanius should disconnect from the call after that.

*IMN- FINE*

Please confirm that we remain in agreement that, as you put it in your August 6 email, "any conference call will be in the nature of settlement discussions and will be without prejudice and 'off the record' and not useable in any context."

*IMN- CORRECT...THIS IS OUR UNDERSTANDING AND AGREEMENT*

Sincerely,
Pamela Jarvis

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Sunday, August 22, 2004 3:51 PM
**To:** William R. Lanius; Gregory P. Joseph; Pamela Jarvis
**Cc:** Avie Arenson (Avie Arenson); mgj@attglobal.net; Eugene I. Krieger (Gene Krieger); George J. Buchler; konig@skynet.be; bjj@jesselson.com; starjewelers@aol.com; mfrankel@iaac.com; Thomas M. Wood
**Subject:** RE: ALH Holdings and Swiss Re

Avie will be traveling on Weds.as well.

does Thursday at the same time work for all?

please let me know.

**From:** William R. Lanius [mailto:wrlanius@bellsouth.net]
**Sent:** Sunday, August 22, 2004 11:15 AM
**To:** Isaac M. Neuberger
**Cc:** Shalom Lamm; Avie Arenson (Avie Arenson); Bruce Stein (Bruce Stein); Eugene I. Krieger (Gene Krieger); George J. Buchler
**Subject:** RE: ALH Holdings and Swiss Re

Isaac ...... Sorry but I will not be available this Wed. (or Mon-Tues) because of previously scheduled meetings and travel plans. I can be available on Thursday at most any time that is convenient for you. Please let me know and I will be glad to help. Thx...... WRL

Bill Lanius
e-mail: wrlanius@bellsouth.net
phone: 904-219-8460
fax: 904-279-9556

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Sunday, August 22, 2004 6:04 AM
**To:** Gregory P. Joseph; Pamela Jarvis
**Cc:** avie@arenson.co.il; konig@skynet.be; mgj@attglobal.net; bjj@jesselson.com; starjewelers@aol.com; mfrankel@iaac.com; Thomas M. Wood; William R. Lanius
**Subject:** ALH Holdings and Swiss Re

The conference call is now scheduled for Wednesday August 25 at:

11 AM- USA EAST COAST
8 AM  USA WEST COAST
4 PM- LONDON
5 PM- WEST. EUROPE
6 PM- ISRAEL

I WILL BE IN LONDON. THE DIAL IN NUMBERS ARE:

DOMESTIC USA- 1-800-213-0326

FOREIGN ACCESS- 1-913-312-4152

PASS CODE 810433

I WILL BE ON MY GSM...IF ANYONE HAS DIFFICULTY WITH THE ACCESS, PLEASE CALL ME AT 1-443-570-5135...THIS IS A USA BASED GSM

I ASSUME THAT MR. JOSEPH OR M'S JARVIS WILL ADVISE THE SHAMROCK FOLKS. I HAVE ASKED BILL LANIUS TO BE ON THE CALL AND REPORT ON WHAT TRANSPIRED AT THE MEETING WITH LEVITT AND SWISS RE. AFTERWARDS HE CAN DISCONNECT.

**********************************

CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.

8/8/2005

**********************************

**********************************

CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin &
Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended
recipient and may constitute a communication protected by the attorney-client privilege. If you are
not the intended recipient or a person responsible for delivering it to the intended recipient, you
are hereby notified that any use, distribution, or copying of this communication or its contents is
strictly prohibited. If you have received this communication in error, please notify us immediately
by telephone at (410) 332-8550.
**********************************


**********************************

CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber,
P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may
constitute a communication protected by the attorney-client privilege. If you are not the intended
recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that
any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have
received this communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************

# EXHIBIT J

**ALH HOLDINGS LLC**
489 Fifth Avenue
New York, NY 10017

July 1, 2001

Shamrock Capital Advisors, Inc.
4444 Lakeside Drive
Burbank, California  91505

Attention:  George J. Buchler

Dear George:

        This letter will confirm our engagement of Shamrock Capital Advisors, Inc., a Delaware corporation ("SCA"), to provide consulting services to ALH Holdings LLC, a Delaware limited liability company (the "Company"). The commencement date of the payment obligations contemplated by paragraph 2 of this letter shall be July 1, 2001. We understand that SCA provides investment services to Shamrock Holdings of California, Inc. ("SHOC"), an equity holder of the Company, and to others.

        1.     SCA will consult with, and provide advice to, the officers and employees of the Company concerning matters generally arising out of the business affairs of the Company. It is understood that the Company shall have no obligation to follow any of SCA's advice and that SCA shall not have any duty to provide any oversight or review of the Company's activities or plans. SCA shall devote such time as it deems necessary to perform the services to be rendered by it hereunder, and SCA shall not be required to devote any minimum amount of time to the performance of such services. SCA may also be retained to provide additional special services to the Company, upon terms and conditions mutually acceptable to SCA and the Company.

        2.     SCA's compensation for such consulting services hereunder will be $100,000.00 per year, payable semi-annually in advance on January 1 and July 1 of each year, which fee will be non-refundable and deemed earned upon receipt by SCA. On the date hereof, the Company will make a payment to SCA in immediately available funds of $50,000.00 for consulting services provided or to be provided during the 2001 calendar year. The Company shall also reimburse SCA (or cause SCA to be reimbursed), upon the request of SCA, for all of its reasonable out-of-pocket costs and expenses in connection with the performance of its services hereunder upon documentation thereof.

72587

3.    The Company has been advised that SCA (and its officers and directors) provide consulting, management and other services to SHOC and its affiliates and entities in which SHOC and its affiliates invest and others and that SCA anticipates it will provide similar services to other persons and entities. Accordingly, the Company acknowledges and agrees that SCA shall not be prevented or restricted, in any manner whatsoever, by this letter agreement, from providing services (pursuant to a written agreement or otherwise) to any other person or entity and will be supplying services to the Company on a non-exclusive basis.

4.    (a)    The Company has been advised that (i) the services SCA (and its officers and directors) provides to SHOC and its affiliates include or may include the identification, analysis and structuring of investment opportunities for SHOC and its affiliates, including, among other things, entities engaged in the real estate, construction and residential home building industries ("Building Companies"); and (ii) certain officers, directors and/or shareholders of SHOC and its affiliates will be directors of the Company, and may be directors and/or officers of other companies, including, without limitation, Building Companies, in which SHOC and its affiliates make or have made investments.

(b)    The Company acknowledges and agrees that it shall not have any right to participate in any acquisition of all or part of any equity interest in, or other transaction involving, any investment opportunity of SHOC or its affiliates, including, without limitation, any such opportunity with respect to any Building Companies (a "Transaction") identified by SCA or with which SHOC or any of its affiliates engages in a Transaction, that SCA or SHOC may allocate opportunities to engage in Transactions among their affiliates on any basis determined by SCA and SHOC, and that neither SCA nor SHOC, nor any of their affiliates shall have any responsibility to offer or permit the Company to participate, or liability to the Company for failing to offer the Company an opportunity to participate, or for preventing the Company from participating, by agreement, vote of shares or otherwise, in any Transaction. The Company further acknowledges and agrees that it will not hold SCA, SHOC or any of their affiliates, responsible for any action or inaction taken or not taken by any of them with respect to the allocation of opportunities to engage in Transactions among SHOC and such affiliates. Nothing contained in this paragraph 4 shall prevent SCA, SHOC or any of their affiliates, in its or their sole discretion, from offering the Company the opportunity to participate in any Transaction, or prevent the Company from accepting such an offer.

5.    The Company agrees to indemnify SCA and its affiliates in accordance with Schedule A, as attached hereto.

2

72587

6. This letter agreement may be terminated at any time, with or without cause, by SCA. The Company may terminate this letter agreement at any time, with or without cause, commencing on the earlier of December 31, 2002 or the date upon which SCA does not hold, in the aggregate, at least 10% of the Class A Membership Interests (as defined in the Operating Agreement of the Company) of the Company. Termination of this letter agreement by the Company shall not relieve the Company from its obligations (i) to pay to SCA any unpaid portion of the total amount of fees due to SCA (including any and all expenses incurred by SCA but not yet reimbursed by the Company in connection with the performance of services hereunder), which may be paid in accordance with paragraph 2 hereof, and (ii) to indemnify SCA in accordance with the provisions of Schedule A hereto, which obligations shall survive any termination of this letter agreement by the Company or SCA.

72587

If this letter accurately sets forth our understanding with respect to the subject matter hereof, please indicate that SCA will be bound hereby by executing the enclosed copy of this letter in the space provided and return it to us.

Very truly yours,

ALH HOLDINGS LLC

By:

Title: CHAIRMAN

Agreed to and accepted
this 1st day of July, 2001

SHAMROCK CAPITAL ADVISORS, INC.

By:

Name:

Title:

72587

If this letter accurately sets forth our understanding with respect to the subject matter hereof, please indicate that SCA will be bound hereby by executing the enclosed copy of this letter in the space provided and return it to us.

Very truly yours,

ALH HOLDINGS LLC

By: _____
Title: _____

Agreed to and accepted
this 1st day of July, 2001

SHAMROCK CAPITAL ADVISORS, INC.

By: _____
Name: _____
Title: _____

72587

**SCHEDULE A**

As part of the consideration for the agreement of SHAMROCK CAPITAL
ADVISORS, INC., a Delaware corporation ("SCA"), to furnish its services, ALH
HOLDINGS LLC, a Delaware limited liability company (the "Company"), agrees to
indemnify and hold harmless SCA and its affiliates and the respective partners, officers,
directors, employees and agents of, and persons controlling, SCA or any of its affiliates
within the meaning of either Section 15 of the Securities Act of 1933, as amended, or
Section 20 of the Securities Exchange Act of 1934, as amended, and each of their
respective successors and assigns (collectively, the "indemnified persons") from and
against all claims, liabilities, expenses, losses or damages (or actions in respect thereof)
related to or arising out of actions taken (or omitted to be taken) by SCA pursuant to the
terms of the letter agreement, dated July 1, 2001, between SCA and the Company (the
"Letter Agreement"), or SCA's role in connection therewith; provided, however, that the
Company shall not be responsible for any claims, liabilities, expenses, losses and
damages to the extent that it is finally judicially determined that they result primarily
from actions taken or omitted to be taken by SCA in bad faith or due to SCA's gross
negligence or willful misconduct. If for any reason (other than the bad faith, gross
negligence or willful misconduct of SCA as provided above) the foregoing indemnity is
unavailable to SCA or insufficient to hold SCA harmless, then the Company shall
contribute to the amount paid or payable by SCA as a result of such claim, liability,
expense, loss or damage in such proportion as is appropriate to reflect not only the
relative benefits received by the Company on the one hand and SCA on the other but also
the relative fault of the Company and SCA, as well as any relevant equitable
considerations, subject to the limitations that in any such event SCA's aggregate
contribution to all losses, claims, expenses, liabilities and damages shall not exceed the
amount of fees actually received by SCA pursuant to the Letter Agreement. Promptly
after receipt by SCA of notice of any complaint or the commencement of any action or
proceeding with respect to which indemnification may be sought against the Company,
SCA will notify the Company in writing of the receipt or commencement thereof, but
failure to notify the Company will relieve the Company from any liability which it may
have hereunder only if, and to the extent that, such failure results in the forfeiture of
substantial rights and defenses, and will not in any event relieve the Company from any
other obligation to any indemnified person other than under this indemnification
agreement. The Company shall assume the defense of such action (including payment of
fees and disbursements of counsel) insofar as such action shall relate to any alleged
liability in respect of which indemnity may be sought against the Company. SCA shall
have the right to employ separate counsel in any such action and to participate in the
defense thereof, and the fees and disbursements of such counsel shall be, subject to the
following sentence, at the expense of the Company. The Company shall pay the fees and
expenses of one separate counsel for SCA and any other indemnified persons if the
named parties to any such action (including any impleaded parties) include the Company
(or any of the directors of the Company) and SCA and (i) in the good faith judgment of

SCA the use of joint counsel would present such counsel with an actual or potential conflict of interest or (ii) SCA shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the Company (or the director(s)). The Company shall not be liable to indemnify any person for any settlement of any claim or action effected without the Company's written consent, which consent shall not be unreasonably withheld. In addition, the Company agrees to reimburse SCA and each other indemnified person for all expenses (including reasonable fees and disbursements of counsel if the Company does not assume the defense of such action) as they are incurred by SCA, or any indemnified person in connection with investigating, preparing or defending any such action or claim. SCA shall have no liability to the Company or any other person in connection with the services which they render pursuant to the Letter Agreement, except for SCA's bad faith, gross negligence or willful misconduct judicially determined as aforesaid. The indemnification, contribution and expense reimbursement obligation the Company has under this paragraph shall be in addition to any liability the Company may otherwise have.

72587

# EXHIBIT J

**ALH HOLDINGS LLC**
489 Fifth Avenue
New York, NY 10017

July 1, 2001

Shamrock Capital Advisors, Inc.
4444 Lakeside Drive
Burbank, California 91505

Attention: George J. Buchler

Dear George:

        This letter will confirm our engagement of Shamrock Capital Advisors, Inc., a Delaware corporation ("SCA"), to provide consulting services to ALH Holdings LLC, a Delaware limited liability company (the "Company"). The commencement date of the payment obligations contemplated by paragraph 2 of this letter shall be July 1, 2001. We understand that SCA provides investment services to Shamrock Holdings of California, Inc. ("SHOC"), an equity holder of the Company, and to others.

        1.    SCA will consult with, and provide advice to, the officers and employees of the Company concerning matters generally arising out of the business affairs of the Company. It is understood that the Company shall have no obligation to follow any of SCA's advice and that SCA shall not have any duty to provide any oversight or review of the Company's activities or plans. SCA shall devote such time as it deems necessary to perform the services to be rendered by it hereunder, and SCA shall not be required to devote any minimum amount of time to the performance of such services. SCA may also be retained to provide additional special services to the Company, upon terms and conditions mutually acceptable to SCA and the Company.

        2.    SCA's compensation for such consulting services hereunder will be $100,000.00 per year, payable semi-annually in advance on January 1 and July 1 of each year, which fee is non-refundable and deemed earned upon receipt by SCA. On the date hereof, the Company will make a payment to SCA in immediately available funds of $50,000.00 for consulting services provided or to be provided during the 2001 calendar year. The Company shall also reimburse SCA (or cause SCA to be reimbursed), upon the request of SCA, for all of its reasonable out-of-pocket costs and expenses in connection with the performance of its services hereunder upon documentation thereof.

72587

3.    The Company has been advised that SCA (and its officers and directors) provide consulting, management and other services to SHOC and its affiliates and entities in which SHOC and its affiliates invest and others and that SCA anticipates it will provide similar services to other persons and entities. Accordingly, the Company acknowledges and agrees that SCA shall not be prevented or restricted, in any manner whatsoever, by this letter agreement, from providing services (pursuant to a written agreement or otherwise) to any other person or entity and will be supplying services to the Company on a non-exclusive basis.

4.    (a)    The Company has been advised that (i) the services SCA (and its officers and directors) provides to SHOC and its affiliates include or may include the identification, analysis and structuring of investment opportunities for SHOC and its affiliates, including, among other things, entities engaged in the real estate, construction and residential home building industries ("Building Companies"); and (ii) certain officers, directors and/or shareholders of SHOC and its affiliates will be directors of the Company, and may be directors and/or officers of other companies, including, without limitation, Building Companies, in which SHOC and its affiliates make or have made investments.

(b)    The Company acknowledges and agrees that it shall not have any right to participate in any acquisition of all or part of any equity interest in, or other transaction involving, any investment opportunity of SHOC or its affiliates, including, without limitation, any such opportunity with respect to any Building Companies (a "Transaction") identified by SCA or with which SHOC or any of its affiliates engages in a Transaction, that SCA or SHOC may allocate opportunities to engage in Transactions among their affiliates on any basis determined by SCA and SHOC, and that neither SCA nor SHOC, nor any of their affiliates shall have any responsibility to offer or permit the Company to participate, or liability to the Company for failing to offer the Company an opportunity to participate, or for preventing the Company from participating, by agreement, vote of shares or otherwise, in any Transaction. The Company further acknowledges and agrees that it will not hold SCA, SHOC or any of their affiliates, responsible for any action or inaction taken or not taken by any of them with respect to the allocation of opportunities to engage in Transactions among SHOC and such affiliates. Nothing contained in this paragraph 4 shall prevent SCA, SHOC or any of their affiliates, in its or their sole discretion, from offering the Company the opportunity to participate in any Transaction, or prevent the Company from accepting such an offer.

5.    The Company agrees to indemnify SCA and its affiliates in accordance with Schedule A, as attached hereto.

2

72587

6.    This letter agreement may be terminated at any time, with or without cause, by SCA. The Company may terminate this letter agreement at any time, with or without cause, commencing on the earlier of December 31, 2002 or the date upon which SCA does not hold, in the aggregate, at least 10% of the Class A Membership Interests (as defined in the Operating Agreement of the Company) of the Company. Termination of this letter agreement by the Company shall not relieve the Company from its obligations (i) to pay to SCA any unpaid portion of the total amount of fees due to SCA (including any and all expenses incurred by SCA but not yet reimbursed by the Company in connection with the performance of services hereunder), which may be paid in accordance with paragraph 2 hereof, and (ii) to indemnify SCA in accordance with the provisions of Schedule A hereto, which obligations shall survive any termination of this letter agreement by the Company or SCA.

3

If this letter accurately sets forth our understanding with respect to the subject matter hereof, please indicate that SCA will be bound hereby by executing the enclosed copy of this letter in the space provided and return it to us.

Very truly yours,

ALH HOLDINGS LLC

By: _____

Title: _CHAIRMAN_____

Agreed to and accepted
this 1st day of July, 2001

SHAMROCK CAPITAL ADVISORS, INC.

By:
Name:_____
Title: _____

72587

If this letter accurately sets forth our understanding with respect to the subject matter hereof, please indicate that SCA will be bound hereby by executing the enclosed copy of this letter in the space provided and return it to us.

Very truly yours,

ALH HOLDINGS LLC

By: _____

Title: _____

Agreed to and accepted
this 1st day of July, 2001

SHAMROCK CAPITAL ADVISORS, INC.

By: _____
Name: _____
Title: _____

72587

SCHEDULE A

As part of the consideration for the agreement of SHAMROCK CAPITAL
ADVISORS, INC., a Delaware corporation ("SCA"), to furnish its services, ALH
HOLDINGS LLC, a Delaware limited liability company (the "Company"), agrees to
indemnify and hold harmless SCA and its affiliates and the respective partners, officers,
directors, employees and agents of, and persons controlling, SCA or any of its affiliates
within the meaning of either Section 15 of the Securities Act of 1933, as amended, or
Section 20 of the Securities Exchange Act of 1934, as amended, and each of their
respective successors and assigns (collectively, the "indemnified persons") from and
against all claims, liabilities, expenses, losses or damages (or actions in respect thereof)
related to or arising out of actions taken (or omitted to be taken) by SCA pursuant to the
terms of the letter agreement, dated July 1, 2001, between SCA and the Company (the
"Letter Agreement"), or SCA's role in connection therewith; provided, however, that the
Company shall not be responsible for any claims, liabilities, expenses, losses and
damages to the extent that it is finally judicially determined that they result primarily
from actions taken or omitted to be taken by SCA in bad faith or due to SCA's gross
negligence or willful misconduct. If for any reason (other than the bad faith, gross
negligence or willful misconduct of SCA as provided above) the foregoing indemnity is
unavailable to SCA or insufficient to hold SCA harmless, then the Company shall
contribute to the amount paid or payable by SCA as a result of such claim, liability,
expense, loss or damage in such proportion as is appropriate to reflect not only the
relative benefits received by the Company on the one hand and SCA on the other but also
the relative fault of the Company and SCA, as well as any relevant equitable
considerations, subject to the limitations that in any such event SCA's aggregate
contribution to all losses, claims, expenses, liabilities and damages shall not exceed the
amount of fees actually received by SCA pursuant to the Letter Agreement. Promptly
after receipt by SCA of notice of any complaint or the commencement of any action or
proceeding with respect to which indemnification may be sought against the Company,
SCA will notify the Company in writing of the receipt or commencement thereof, but
failure to notify the Company will relieve the Company from any liability which it may
have hereunder only if, and to the extent that, such failure results in the forfeiture of
substantial rights and defenses, and will not in any event relieve the Company from any
other obligation to any indemnified person other than under this indemnification
agreement. The Company shall assume the defense of such action (including payment of
fees and disbursements of counsel) insofar as such action shall relate to any alleged
liability in respect of which indemnity may be sought against the Company. SCA shall
have the right to employ separate counsel in any such action and to participate in the
defense thereof, and the fees and disbursements of such counsel shall be, subject to the
following sentence, at the expense of the Company. The Company shall pay the fees and
expenses of one separate counsel for SCA and any other indemnified persons if the
named parties to any such action (including any impleaded parties) include the Company
(or any of the directors of the Company) and SCA and (i) in the good faith judgment of

72587

SCA the use of joint counsel would present such counsel with an actual or potential conflict of interest or (ii) SCA shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the Company (or the director(s)). The Company shall not be liable to indemnify any person for any settlement of any claim or action effected without the Company's written consent, which consent shall not be unreasonably withheld. In addition, the Company agrees to reimburse SCA and each other indemnified person for all expenses (including reasonable fees and disbursements of counsel if the Company does not assume the defense of such action) as they are incurred by SCA, or any indemnified person in connection with investigating, preparing or defending any such action or claim. SCA shall have no liability to the Company or any other person in connection with the services which they render pursuant to the Letter Agreement, except for SCA's bad faith, gross negligence or willful misconduct judicially determined as aforesaid. The indemnification, contribution and expense reimbursement obligation the Company has under this paragraph shall be in addition to any liability the Company may otherwise have.

72587

# EXHIBIT JJ

## Pamela Jarvis

| From: | Isaac M. Neuberger [IMN@NQGRG.com] |
|---|---|
| Sent: | Sunday, September 05, 2004 12:25 PM |
| To: | Pamela Jarvis |
| Cc: | Thomas M. Wood |
| Subject: | RE: ALH Update - Swiss Re Conference Call |
| Attachments: | ALH Update - Swiss Re Conference Call.doc |

Avie Arenson received the attached. Obviously, neither Avie nor the Bs have any duty to make any other proposal nor is their silence an approval, acquiescence or ratification of whatever it that Shamrock and its directors may do. Our complaint is that the situation we now face was foreseen, that it results in the loss of our equity and that it could have been avoided but for the Shamrock decision to exit this investment, regardless of the consequence to the Bs since, as Shamrock told Avie and me, in our meeting, that ALH was taking too much management time.

In considering your suggestion that we agree to a Delaware mediation process, as you know, we will require that Shamrock, in advance of the Mediation, agree to the same level of discovery that we think we could achieve if we were to file a lawsuit.I have asked Sam Wood to scope that out and to provide you with the outline a lawsuit that would be the basis of the mediation.

In the meantime, we would like to know ASAP how Shamrock valued ALH on its books, from time to time, and how it described this investment in its reports to its investors. When did Shamrock write off its investment (if it did) ? We believe that these reports would be discoverable. The answer to this inquiry will reflect how sincere Shamrock is in seeking a resolution through mediation and is willing to provide relevant discovery.

Regards

----- Original Message -----
**From:** George Buchler
**To:** Gene Krieger ; Bruce Stein ; 'Arenson Avie' ; 'Shalom Lamm'
**Sent:** Thursday, September 02, 2004 8:20 PM
**Subject:** ALH Update - Swiss Re Conference Call

Gentlemen:

Please find attached a further update to the Swiss Re and Wachovia financing issues.
*********************************

CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
***********************************

# EXHIBIT K

UNANIMOUS WRITTEN CONSENT
OF THE SUPERVISORY BOARD
OF
ALH HOLDINGS LLC
(a Delaware limited liability company)

July 1, 2001


Pursuant to the provisions contained in Title 6, Sections 18-106 and 18-302(d) of the

Delaware Limited Liability Company Act (the "DLLCA") and the Operating Agreement (the

"Operating Agreement") of ALH Holdings LLC, a Delaware limited liability company (the

"Company"), dated as of June 12, 1998, as amended, the undersigned, being all of the

Representatives designated to serve on the Supervisory Board of the Company hereby take the

following action by unanimous written consent:


APPROVAL OF AGREEMENT

　　　　WHEREAS, the Supervisory Board has determined that it is in the best
interests of the Company to enter into an agreement (the "Agreement") among
Lion ALH Capital LLC, a Delaware limited liability company ("Manager"), Lion
& Lamm Capital, LLC, a New York limited liability company ("Lion Capital"),
Shalom E. Lamm ("Lamm"), Jonathan Zich ("Zich"), John D. Hourihan
("Hourihan") (Manager, Lion Capital, Lamm, Zich and Hourihan are collectively
referred to herein as the "Management Persons") and the Company, substantially
in the form previously circulated to and reviewed by the Supervisory Board,
pursuant to the terms of which the Company will release certain claims that it may
have against the Management Persons in exchange for a Promissory Note in the
face amount of $1.4 million (the "Promissory Note"); the cancellation of
indebtedness in the amount of $236,000 owed to the Management Persons by its
wholly-owned Subsidiary ALH II, and the payment of $264,000;

　　　　WHEREAS, the Supervisory Board has determined that it is in the best
interests of the Company to enter into the Agreement on the terms and subject to
the conditions set forth in the Agreement;

　　　　NOW, THEREFORE, BE IT RESOLVED, that the Agreement,
substantially in the form previously reviewed by the Supervisory Board of the

Company, and the transactions contemplated thereby, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Agreement, to execute and deliver the Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF PROMISSORY NOTE

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to accept, in connection with the execution of the Agreement, the Promissory Note from the Management Persons, substantially in the form previously circulated to and reviewed by the Supervisory Board;

NOW, THEREFORE, BE IT RESOLVED, that the Promissory Note, substantially in the form previously reviewed by the Supervisory Board of the Company, be and hereby is, accepted, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Promissory Note, to accept the Promissory Note with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Promissory Note, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

72906

## APPROVAL OF LETTER AGREEMENTS

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into two Letter Agreements, each between the Management Persons and the Company (the "Letter Agreements"), substantially in the form previously circulated to and reviewed by the Supervisory Board; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Letter Agreements on the terms and subject to the conditions set forth in the Letter Agreements;

NOW, THEREFORE, BE IT RESOLVED, that the Letter Agreements, substantially in the form previously reviewed by the Supervisory Board of the Company, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Letter Agreements, to execute and deliver the Letter Agreements with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Letter Agreements, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF LION & LAMM CAPITAL, LLC CONSULTING AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a consulting agreement between Lion Capital and the Company (the "Lion Capital Consulting Agreement"), substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which the Company will retain Lion Capital to render consulting services with respect to the Company and its subsidiaries; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Lion Capital Consulting Agreement on the terms and subject to the conditions set forth in the Lion Capital Consulting Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Lion Capital Consulting Agreement, substantially in the form previously reviewed by the

72906

Supervisory Board of the Company, be and hereby is, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Lion Capital Consulting Agreement, to execute and deliver the Lion Capital Consulting Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Lion Capital Consulting Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF SHAMROCK CAPITAL ADVISORS CONSULTING AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a consulting agreement between Shamrock Capital Advisors, Inc., a Delaware corporation ("SCA"), and the Company (the "SCA Consulting Agreement"), substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which the Company will retain SCA to render consulting services with respect to the Company; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the SCA Consulting Agreement on the terms and subject to the conditions set forth in the SCA Consulting Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the SCA Consulting Agreement, substantially in the form previously reviewed by the Supervisory Board of the Company, be and hereby is, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the SCA Consulting Agreement, to execute and deliver the SCA Consulting Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the SCA Consulting Agreement, on such terms as such officers

- 4 -

may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF GUARANTEE AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a guarantee agreement (the "Guarantee Agreement") by Cousy LLC, a Delaware limited liability company ("Cousy"), in favor of the Company, substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which Cousy will guarantee certain payment obligations of the Management Persons made pursuant to the terms of the Agreement and the documents executed by the Management Persons in connection therewith; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Guarantee Agreement on the terms and subject to the conditions set forth in the Guarantee Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Guarantee Agreement, substantially in the form previously reviewed by the Supervisory Board of the Company, and the transactions contemplated thereby, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Guarantee Agreement, to execute and deliver the Guarantee Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Guarantee Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

- 5 -

72906

## APPROVAL OF PLEDGE AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a pledge agreement (the "Pledge Agreement") by Cousy, in favor of the Company, substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which Cousy will pledge its ownership interests in membership units of [QACC LLC, a Delaware limited liability company,] to secure, pursuant to the terms of the Agreement, among other things, the Guarantee Agreement delivered by Cousy and the obligations of the Management Persons under all documents entered into in connection with the Agreement, including the Promissory Note; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Pledge Agreement on the terms and subject to the conditions set forth in the Pledge Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Pledge Agreement, substantially in the form previously reviewed by the Supervisory Board of the Company, and the transactions contemplated thereby, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Pledge Agreement, to execute and deliver the Pledge Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Pledge Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## AUTHORIZATION OF SIGNATORY

WHEREAS, the Manager customarily signs documents on behalf of the Company;

WHEREAS, the Manager is a party to the Agreement and the Letter Agreements and may indirectly benefit under the Guarantee Agreement and the Pledge Agreement; and

72906

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to authorize George J. Buchler instead of the Manager to execute the Agreement, the Letter Agreements, the Guarantee Agreement, the Pledge Agreement and the Lion Capital Consulting Agreement (collectively, the "Release Agreements") on behalf of the Company.

NOW, THEREFORE, BE IT RESOLVED, that George J. Buchler be, and hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Release Agreements, to execute and deliver the Release Agreements with such changes, modifications and/or additions thereto as George J. Buchler shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Release Agreements, on such terms as George J. Buchler may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

## FORMATION OF AUDIT COMMITTEE

WHEREAS, in accordance with Section 18-407 of the DLLCA a limited liability company may establish a committee of representatives to perform functions delegated to it by the board of directors of a limited liability company;

WHEREAS, the Supervisory Board of the Company has determined that it is in the best interests of the Company to establish a committee of members of the Supervisory Board of the Company (the "Audit Committee") to oversee the financial and accounting affairs of the Company, including establishing the annual budget, to review the auditing of its finances and financial procedures, and to perform such functions as may from time to time be delegated to it by the Supervisory Board.

WHEREAS, the Supervisory Board of the Company has determined that it is in the best interests of the Company to have such an Audit Committee be composed of three Representatives, two of whom shall be the Class A Representatives and one of whom shall be the Class B Representative.

NOW, THEREFORE, BE IT RESOLVED, that an Audit Committee of the Supervisory Board of the Company be, and hereby is, established to oversee the financial and accounting affairs of the Company, including establishing the annual budget, to review the auditing of its finances and financial procedures, and to perform such functions as may from time to time be delegated to it by the Supervisory Board.

72906

RESOLVED, that the Audit Committee shall be composed of three Representatives, two of whom shall be the Class A Representatives and one of whom shall be the Class B Representative.

## AUTHORIZATION TO APPOINT GEORGE BUCHLER TO SUBSIDIARY BOARDS

WHEREAS, the Agreement contemplates that George Buchler will be appointed to the board of directors of each subsidiary of the Company;

NOW, THEREFORE, BE IT RESOLVED, that that the officers and representatives of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to take all such action as such officers and representatives shall deem advisable, necessary or desirable, to appoint George Buchler to the board of directors of each subsidiary of the Company, the preparation, execution and delivery of any documents in connection herewith to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or representative of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## GENERAL RESOLUTIONS

RESOLVED, that each of the officers of the Company and George Buchler be, and each of them hereby is, authorized and directed and empowered on behalf of the Company and in its name to prepare, execute, deliver and/or file any applications, certificates, agreements, or any other instruments or documents, or amendments or supplements thereto, and to incur all fees and to pay all expenses which such officers or George Buchler may deem necessary or appropriate to enable the Company to carry out the obligations of the Company under, and to effect the transactions contemplated by, the Release Agreements and the SCA Consulting Agreement, and to do and to cause to be done any and all other acts and things as such officers or George Buchler may in their discretion deem necessary or appropriate to carry out the purposes of the foregoing resolutions, including, without limitation, the formation of an Audit Committee, the preparation, execution, delivery and/or filing of such documents, agreements and instruments, or the doing or causing to be done of such other acts and things, to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

72906

FURTHER RESOLVED, that the appropriate officers of the Company and George Buchler be, and hereby are authorized, empowered and directed on behalf of the Company to take any and all actions and to execute and deliver any and all documents, either by original signature or, where appropriate, by facsimile signature, in their sole discretion, necessary and advisable, to fulfill and carry into effect the terms, purposes and intents of the foregoing resolutions.

72906

IN WITNESS WHEREOF, the undersigned have executed this
Unanimous Written Consent as of the date set forth above.


_____
Class A Representative


_____
Class A Representative


_____
Class B Representative


_____
Class D Representative


_____
Class D Representative


With respect to the formation of the Audit Committee, acknowledged by:

LION ALH CAPITAL LLC


_____
By:    Shalom E. Lamm
Title:    Chairman


72906

IN WITNESS WHEREOF, the undersigned have executed this

Unanimous Written Consent as of the date set forth above.


_____

Class A Representative


_____

Class A Representative


_____          *Luis Arenzon*
                                              28 Aug 01
Class B Representative


_____

Class D Representative


_____

Class D Representative


With respect to the formation of the Audit Committee, acknowledged by:

LION ALH CAPITAL LLC


_____

By:    Shalom E. Lamm
Title:  Chairman


72906

IN WITNESS WHEREOF, the undersigned have executed this Unanimous Written Consent as of the date set forth above.

_____

Class A Representative


_____

Class A Representative


_____

Class B Representative


_____

Class D Representative


_____

Class D Representative


With respect to the formation of the Audit Committee, acknowledged by:

LION ALA CAPITAL LLC


_____

By:    Shalom E. Lamm

Title:   Chairman


- 10 -

72906

IN WITNESS WHEREOF, the undersigned have executed this Unanimous Written Consent as of the date set forth above.

_____
Class A Representative

_____
Class A Representative

_____
Class B Representative

_____
Class D Representative

_____
Class D Representative

With respect to the formation of the Audit Committee, acknowledged by:

LION ALH CAPITAL LLC

_____
By:    Shalom E. Lamm
Title: Chairman

- 10 -                                                    72906

# EXHIBIT KK

**Pamela Jarvis**

| | |
|---|---|
| **From:** | Pamela Jarvis |
| **Sent:** | Thursday, September 02, 2004 5:33 PM |
| **To:** | 'Isaac M. Neuberger' |
| **Cc:** | Thomas M. Wood |
| **Subject:** | RE: Applicability of Delaware Law |

Dear Isaac:

As you know, Shamrock totally disagrees with your assertions regarding self-interest and the circumstances leading to the sale of ALH's operations, but that is what we would hope to resolve in the mediation.

Shamrock is certainly open to the idea of discovery in connection with the mediation. As you may know, Delaware Chancery Court Rule 94(d) provides that "The Mediator may request parties to exchange or provide to the Mediator documents or other material necessary to understand the dispute or facilitate a settlement. The parties may agree to exchange any documents or other materials in the possession of the other that may facilitate a settlement." What specifically do you have in mind?

I look forward to hearing from you.

Sincerely,

Pamela Jarvis

-----Original Message-----
From: Isaac M. Neuberger [mailto:IMN@NQGRG.com]
Sent: Monday, August 30, 2004 1:49 PM
To: Pamela Jarvis
Cc: Thomas M. Wood
Subject: RE: Applicability of Delaware Law


I FULLY APPRECIATE SHAMROCK'S DESIRE TO USE A DELAWARE MEDIATION PROCESS.

PLEASE CONSIDER THE SITUATION FROM THE Bs PERSPECTIVE.

THEY FEEL THAT THE SITUATION WE NOW FACE, A TOTAL WRITE OFF, IS A DIRECT AND PROXIMATE RESULT OF A DECISION THAT SHAMROCK MADE, IN ITS OWN SELF INTEREST, TO "SHED" ITSELF OF THE WHAT IT PERCEIVED WAS TOO HEAVY A BURDEN IN RUNNING ALH, DAY TO DAY. THIS WAS NOT AN ALH

1

DECISION. QUITE FRANKLY, THE BOWDEN LITIGATION WAS AN IRRITANT TO BE SURE, BUT IT COULD NOT AND SHOULD NOT HAVE BEEN THE CATALYST FOR DISMEMBERING ALH. WHETHER GEO. BUCHLER AND GENE KRIEGER WANT TO RECALL, I HAD SUGGESTED THAT WE BUY THE ASSETS OF BOWDEN FOR THEIR FMV AND LEAVE THE OLD BOWDEN ENTITY WITH A NOTE. HENCE, THE ISSUE FOR A TRIER OF FACT, TO DETERMINE, IS WHETHER WHAT HAPPENED HERE WAS A BREACH OF THE FIDUCIARY DUTY THAT THE INDIVIDUAL DIRECTORS AND SHAMROCK OWED TO THE Bs OR NOT.

DISCOVERY IS CRITICAL TO THIS TYPE OF FACTUAL BASED DETERMINATION, HENCE WE NEED TO KNOW THE EXTENT OF DISCOVERY THAT SHAMROCK AND THE INDIVIDUAL DIRECTORS WILL AGREE TO

-----Original Message-----
From: Pamela Jarvis [mailto:pjarvis@josephnyc.com]
Sent: Monday, August 30, 2004 8:57 AM
To: Isaac M. Neuberger
Cc: Thomas M. Wood
Subject: Re: Applicability of Delaware Law

Dear Isaac:

In addition to confirming that Delaware law governs, Section 10.2 would weigh in favor of Delaware as the appropriate forum.

The "suggestion of a $3 Million payment to the As," referred to in your 12/22/02 email, implied a payment to Shamrock less than $2 million. Even assuming, for the sake of argument, that if this "suggestion" constituted a written offer, it would not be a written offer to pay more than $2 million for Shamrock's interest in ALH. You assert that the December 2002 emails attached to your present email "were followed by face to face discussions, where the Bs discussed going as high as $7MM," but you have provided no documentation of such meetings or any offer -- written or otherwise -- of $7 million. When and where did these "face to face discussions" occur, and who were the participants? The Shamrock people have no recollection of such meetings, or, indeed, any face to face discussion with any of your clients (other than Mr. Arenson) on any subject relating to ALH. In any event, the fact that the parties did not agree on a buy-out price -- at whatever level -- is hardly evidence of "bad faith" on Shamrock's part.

The Delaware mediation process (like all other mediation processes I am aware of) does not provide for formal discovery, but the parties could of course agree to exchange whatever information they want to. Also, participation in the mediation would not affect the parties' ability to obtain discovery in future litigation, if any.

Sincerely,

2

Pamela Jarvis


Pamela Jarvis
Gregory P. Joseph Law Offices LLC
805 Third Avenue, 31st Floor
New York, New York 10022
Tel: 212.407.1250
Fax: 212.407.1278

-----Original Message-----
From: Isaac M. Neuberger <IMN@NQGRG.com>
To: Pamela Jarvis <pjarvis@josephnyc.com>
CC: Thomas M. Wood <TMW@NQGRG.com>
Sent: Fri Aug 27 13:04:23 2004
Subject: RE: Applicability of Delaware Law

We are aware of this provision...it does NOT prevent the filing of a suit in North
Carolina, does it?

As to George's unfortunate "lying through your teeth" comment, I am attaching the
original set of e-mails, that reflect his deliberate "bad faith"...these e-mails were
followed by face to face discussions, where the Bs discussed going as high as $7 MM.

Since it appears that Shamrock is unwilling to see its way clear towards an acceptable
resolution, I suspect that much of this will be the subject of discovery.

As we consider the alternatives, if we were to agree to the Delaware Mediation that
you proposed, would we be afforded the same discovery that we would be entitled if
we proceed in a different forum.

_____

From: Pamela Jarvis [mailto:pjarvis@josephnyc.com]
Sent: Friday, August 27, 2004 11:49 AM
To: Isaac M. Neuberger
Cc: Thomas M. Wood
Subject: Applicability of Delaware Law


It occurred to me that you might not be aware that Section 10.2 of the ALH Holdings
LLC Operating Agreement provides that "All questions concerning the construction,
validity and interpretation of this Agreement and the performance of the obligations
imposed by this Agreement shall be governed by the internal law, not the law of

3

conflicts, of the State of Delaware."


Pamela Jarvis
Gregory P. Joseph Law Offices LLC
805 Third Avenue, 31st Floor
New York, NY 10022
Tel: 212-407-1250
Fax: 212-407-1278
pjarvis@josephnyc.com
 <file://www.josephnyc.com> www.josephnyc.com

**********************************
CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************

**********************************
CONFIDENTIALITY NOTICE:  This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege.  If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************

# EXHIBIT L

# A. ARENSON LTD.

**5 HASHITA ST. CAESAREA INDUSTRIAL PARK (ISRAEL)**
**38900 P.O.B 3566, TEL. 972-4-6231111 FAX 972-4-6230230**

## א. ארנסון בע"מ

אזור התעשיה קיסריה, מ"ר השיטה 5, אזור התעשיה קיסריה 38900
ת.ד. 3566, מ. טל. 04-6231111, פקס. 04-6230230
E.mail: arenson1@arenson.co.il

---

**DATE:** _28. 8. 01_ :תאריך

**FACSIMILE**

**No. of pages** _11_ :מס' דפים

**TO:** _David K. Robbins_ :אל

**ATT'N:** _____ :לידי

**FROM:** _A. Arenson_ :מאת

**FAX NO:** _001- 213-HB-2222_ :מס' פקס'

**Re:** _____ ALA  HOLDINGS  LLC. _____ :הנדון

Attached is the unanimous written
consent of the supervisory board OF
July 1, 2001.

UNANIMOUS WRITTEN CONSENT
OF THE SUPERVISORY BOARD
OF
ALH HOLDINGS LLC
(a Delaware limited liability company)

July 1, 2001

Pursuant to the provisions contained in Title 6, Sections 18-106 and 18-302(d) of the

Delaware Limited Liability Company Act (the "DLLCA") and the Operating Agreement (the

"Operating Agreement") of ALH Holdings LLC, a Delaware limited liability company (the

"Company"), dated as of June 12, 1998, as amended, the undersigned, being all of the

Representatives designated to serve on the Supervisory Board of the Company hereby take the

following action by unanimous written consent:

APPROVAL OF AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best
interests of the Company to enter into an agreement (the "Agreement") among
Lion ALH Capital LLC, a Delaware limited liability company ("Manager"), Lion
& Lamm Capital, LLC, a New York limited liability company ("Lion Capital"),
Shalom E. Lamm ("Lamm"), Jonathan Zich ("Zich"), John D. Hourihan
("Hourihan") (Manager, Lion Capital, Lamm, Zich and Hourihan are collectively
referred to herein as the "Management Persons") and the Company, substantially
in the form previously circulated to and reviewed by the Supervisory Board,
pursuant to the terms of which the Company will release certain claims that it may
have against the Management Persons in exchange for a Promissory Note in the
face amount of $1.4 million (the "Promissory Note"); the cancellation of
indebtedness in the amount of $236,000 owed to the Management Persons by its
wholly-owned Subsidiary ALHII, and the payment of $264,000;

WHEREAS, the Supervisory Board has determined that it is in the best
interests of the Company to enter into the Agreement on the terms and subject to
the conditions set forth in the Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Agreement,
substantially in the form previously reviewed by the Supervisory Board of the

72906

Company, and the transactions contemplated thereby, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Agreement, to execute and deliver the Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF PROMISSORY NOTE

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to accept, in connection with the execution of the Agreement, the Promissory Note from the Management Persons, substantially in the form previously circulated to and reviewed by the Supervisory Board;

NOW, THEREFORE, BE IT RESOLVED, that the Promissory Note, substantially in the form previously reviewed by the Supervisory Board of the Company, be and hereby is, accepted, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Promissory Note, to accept the Promissory Note with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Promissory Note, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

-2-

72906

## APPROVAL OF LETTER AGREEMENTS

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into two Letter Agreements, each between the Management Persons and the Company (the "Letter Agreements"), substantially in the form previously circulated to and reviewed by the Supervisory Board; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Letter Agreements on the terms and subject to the conditions set forth in the Letter Agreements;

NOW, THEREFORE, BE IT RESOLVED, that the Letter Agreements, substantially in the form previously reviewed by the Supervisory Board of the Company, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Letter Agreements, to execute and deliver the Letter Agreements with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Letter Agreements, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF LION & LAMM CAPITAL, LLC CONSULTING AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a consulting agreement between Lion Capital and the Company (the "Lion Capital Consulting Agreement"), substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which the Company will retain Lion Capital to render consulting services with respect to the Company and its subsidiaries; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Lion Capital Consulting Agreement on the terms and subject to the conditions set forth in the Lion Capital Consulting Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Lion Capital Consulting Agreement, substantially in the form previously reviewed by the

72906

Supervisory Board of the Company, be and hereby is, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Lion Capital Consulting Agreement, to execute and deliver the Lion Capital Consulting Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Lion Capital Consulting Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF SHAMROCK CAPITAL ADVISORS CONSULTING AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a consulting agreement between Shamrock Capital Advisors, Inc., a Delaware corporation ("SCA"), and the Company (the "SCA Consulting Agreement"), substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which the Company will retain SCA to render consulting services with respect to the Company; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the SCA Consulting Agreement on the terms and subject to the conditions set forth in the SCA Consulting Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the SCA Consulting Agreement, substantially in the form previously reviewed by the Supervisory Board of the Company, be and hereby is, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the SCA Consulting Agreement, to execute and deliver the SCA Consulting Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the SCA Consulting Agreement, on such terms as such officers

- 4 -

72906

may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## APPROVAL OF GUARANTEE AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a guarantee agreement (the "Guarantee Agreement") by Cousy LLC, a Delaware limited liability company ("Cousy"), in favor of the Company, substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which Cousy will guarantee certain payment obligations of the Management Persons made pursuant to the terms of the Agreement and the documents executed by the Management Persons in connection therewith; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Guarantee Agreement on the terms and subject to the conditions set forth in the Guarantee Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Guarantee Agreement, substantially in the form previously reviewed by the Supervisory Board of the Company, and the transactions contemplated thereby, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Guarantee Agreement, to execute and deliver the Guarantee Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Guarantee Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

- 5 -



72906

## APPROVAL OF PLEDGE AGREEMENT

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into a pledge agreement (the "Pledge Agreement") by Cousy, in favor of the Company, substantially in the form previously circulated to and reviewed by the Supervisory Board, pursuant to which Cousy will pledge its ownership interests in membership units of [QACC LLC, a Delaware limited liability company,] to secure, pursuant to the terms of the Agreement, among other things, the Guarantee Agreement delivered by Cousy and the obligations of the Management Persons under all documents entered into in connection with the Agreement, including the Promissory Note; and

WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to enter into the Pledge Agreement on the terms and subject to the conditions set forth in the Pledge Agreement;

NOW, THEREFORE, BE IT RESOLVED, that the Pledge Agreement, substantially in the form previously reviewed by the Supervisory Board of the Company, and the transactions contemplated thereby, be and hereby are, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Pledge Agreement, to execute and deliver the Pledge Agreement with such changes, modifications and/or additions thereto as such officers shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Pledge Agreement, on such terms as such officers may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## AUTHORIZATION OF SIGNATORY

WHEREAS, the Manager customarily signs documents on behalf of the Company;

WHEREAS, the Manager is a party to the Agreement and the Letter Agreements and may indirectly benefit under the Guarantee Agreement and the Pledge Agreement; and

- 6 -

72906



WHEREAS, the Supervisory Board has determined that it is in the best interests of the Company to authorize George J. Buchler instead of the Manager to execute the Agreement, the Letter Agreements, the Guarantee Agreement, the Pledge Agreement and the Lion Capital Consulting Agreement (collectively, the "Release Agreements") on behalf of the Company.

NOW, THEREFORE, BE IT RESOLVED, that George J. Buchler be, and hereby is, authorized and empowered for and on behalf of the Company, to negotiate the final terms and provisions of the Release Agreements, to execute and deliver the Release Agreements with such changes, modifications and/or additions thereto as George J. Buchler shall deem advisable, necessary or desirable, and to negotiate, execute and deliver such other documents, agreements or instruments required or desired to be delivered in connection with the Release Agreements, on such terms as George J. Buchler may deem advisable, necessary or desirable, the preparation, execution and delivery of such documents, agreements and instruments to be conclusive evidence of such due authorization by the Company.

## FORMATION OF AUDIT COMMITTEE

WHEREAS, in accordance with Section 18-407 of the DLLCA a limited liability company may establish a committee of representatives to perform functions delegated to it by the board of directors of a limited liability company;

WHEREAS, the Supervisory Board of the Company has determined that it is in the best interests of the Company to establish a committee of members of the Supervisory Board of the Company (the "Audit Committee") to oversee the financial and accounting affairs of the Company, including establishing the annual budget, to review the auditing of its finances and financial procedures, and to perform such functions as may from time to time be delegated to it by the Supervisory Board.

WHEREAS, the Supervisory Board of the Company has determined that it is in the best interests of the Company to have such an Audit Committee be composed of three Representatives, two of whom shall be the Class A Representatives and one of whom shall be the Class B Representative.

NOW, THEREFORE, BE IT RESOLVED, that an Audit Committee of the Supervisory Board of the Company be, and hereby is, established to oversee the financial and accounting affairs of the Company, including establishing the annual budget, to review the auditing of its finances and financial procedures, and to perform such functions as may from time to time be delegated to it by the Supervisory Board.

-- 7 --



72906

RESOLVED, that the Audit Committee shall be composed of three Representatives, two of whom shall be the Class A Representatives and one of whom shall be the Class B Representative.

## AUTHORIZATION TO APPOINT GEORGE BUCHLER TO SUBSIDIARY BOARDS

WHEREAS, the Agreement contemplates that George Buchler will be appointed to the board of directors of each subsidiary of the Company;

NOW, THEREFORE, BE IT RESOLVED, that that the officers and representatives of the Company be, and each of them hereby is, authorized and empowered for and on behalf of the Company, to take all such action as such officers and representatives shall deem advisable, necessary or desirable, to appoint George Buchler to the board of directors of each subsidiary of the Company, the preparation, execution and delivery of any documents in connection herewith to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or representative of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

## GENERAL RESOLUTIONS

RESOLVED, that each of the officers of the Company and George Buchler be, and each of them hereby is, authorized and directed and empowered on behalf of the Company and in its name to prepare, execute, deliver and/or file any applications, certificates, agreements, or any other instruments or documents, or amendments or supplements thereto, and to incur all fees and to pay all expenses which such officers or George Buchler may deem necessary or appropriate to enable the Company to carry out the obligations of the Company under, and to effect the transactions contemplated by, the Release Agreements and the SCA Consulting Agreement, and to do and to cause to be done any and all other acts and things as such officers or George Buchler may in their discretion deem necessary or appropriate to carry out the purposes of the foregoing resolutions, including, without limitation, the formation of an Audit Committee, the preparation, execution, delivery and/or filing of such documents, agreements and instruments, or the doing or causing to be done of such other acts and things, to be conclusive evidence of such due authorization by the Company.

RESOLVED, that any and all actions heretofore taken by any officer or the Class A Representatives of the Company in connection with the foregoing be, and each of them hereby is, ratified, confirmed and approved.

- 8 -

72906

FURTHER RESOLVED, that the appropriate officers of the Company and George Buchler be, and hereby are authorized, empowered and directed on behalf of the Company to take any and all actions and to execute and deliver any and all documents, either by original signature or, where appropriate, by facsimile signature, in their sole discretion, necessary and advisable, to fulfill and carry into effect the terms, purposes and intents of the foregoing resolutions.

- 9 -



72906

IN WITNESS WHEREOF, the undersigned have executed this

Unanimous Written Consent as of the date set forth above.

_____
Class A Representative

_____
Class A Representative

_____
Class B Representative

_____
Class D Representative

_____
Class D Representative

With respect to the formation of the Audit Committee, acknowledged by:

LION ALH CAPITAL LLC

_____
By:     Shalom E. Lamm
Title:   Chairman

- 10 -

72906

# EXHIBIT LL

## Pamela Jarvis

**From:** Pamela Jarvis
**Sent:** Thursday, September 09, 2004 11:58 AM
**To:** 'Isaac M. Neuberger'
**Cc:** Thomas M. Wood
**Subject:** RE: ALH Update - Swiss Re Conference Call

As I indicated in my September 2 email to you, Shamrock will consider whatever discovery would be likely to facilitate the mediation and make it more productive. Once we have received from Sam the specifics of what you have in mind, we will be able to respond specifically. I would not expect there to be disagreement about the relevant areas.

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Wednesday, September 08, 2004 11:42 AM
**To:** Pamela Jarvis
**Cc:** Thomas M. Wood
**Subject:** RE: ALH Update - Swiss Re Conference Call

Has Shamrock decided on the extent of the discovery that it would consider if we were to agree to the Mediation?

**From:** Pamela Jarvis [mailto:pjarvis@josephnyc.com]
**Sent:** Wednesday, September 08, 2004 8:32 AM
**To:** Isaac M. Neuberger
**Cc:** Thomas M. Wood
**Subject:** RE: ALH Update - Swiss Re Conference Call

Shamrock is checking for the financial information you have requested. I look forward to receiving Sam's outline. Regards, P.J.

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Sunday, September 05, 2004 12:25 PM
**To:** Pamela Jarvis
**Cc:** Thomas M. Wood
**Subject:** RE: ALH Update - Swiss Re Conference Call

Avie Arenson received the attached. Obviously, neither Avie nor the Bs have any duty to make any other proposal nor is their silence an approval, acquiescence or ratification of whatever it that Shamrock and its directors may do. Our complaint is that the situation we now face was foreseen, that it results in the loss of our equity and that it could have been avoided but for the Shamrock decision to exit this investment, regardless of the consequence to the Bs since, as Shamrock told Avie and me, in our meeting, that ALH was taking too much management time.

In considering your suggestion that we agree to a Delaware mediation process, as you know, we will require that Shamrock, in advance of the Mediation, agree to the same level of discovery that we think we could achieve if we were to file a lawsuit.I have asked Sam Wood to scope that out and to provide you with the outline a lawsuit that would be the basis of the mediation.

In the meantime, we would like to know ASAP how Shamrock valued ALH on its books, from time to time, and how it described this investment in its reports to its investors. When did Shamrock write off its investment (if it did) ? We believe that these reports would be discoverable. The answer to this inquiry will reflect how sincere Shamrock is in seeking a resolution through mediation and is willing to provide relevant discovery.


Regards

-------------------------------------------------------------------------------

----- Original Message -----
**From:** George Buchler
**To:** Gene Krieger ; Bruce Stein ; 'Arenson Avie' ; 'Shalom Lamm'
**Sent:** Thursday, September 02, 2004 8:20 PM
**Subject:** ALH Update - Swiss Re Conference Call

Gentlemen:

Please find attached a further update to the Swiss Re and Wachovia financing issues.
**********************************
CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************


**********************************
CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
**********************************