IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 3:05 CV 256-H

| | |
|---|---|
| A. ARENSON HOLDINGS, LTD., D.A. GARDENS, LTD., J12ALH ASSOCIATES, SELK, LLC and LAUREL EQUITY GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN,<br><br>Defendants. | **ANSWER** |

Defendants Shamrock Holdings of California, Inc. ("Shamrock"), its affiliate, Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), George J. Buchler ("Buchler") and Bruce J. Stein ("Stein"), by and through their attorneys, as and for their answer to the Complaint of Plaintiffs A. Arenson Holdings, Ltd. ("Arenson Holdings"), D.A. Gardens, Ltd. ("D.A. Gardens"), J12ALH Associates ("J12"), SELK, LLC ("SELK") and Laurel Equity Group, LLC ("Laurel"), hereby state as follows:

1. In response to the "Background" section of this Complaint, which appears to be intended as paragraph 1, Defendants deny all allegations except admit that Plaintiffs purport to be the Class B Members of ALH Holdings, LLC ("ALH"), a limited liability company organized under Delaware law; that ALH is a holding company that did not conduct its daily business activities in Delaware; that through its subsidiaries, ALH was engaged in the home-building business, and that after the sale of all of ALH's other operations, the last of its operations to be

sold, in December 2004, was in the Charlotte, Greensboro, Winston-Salem and High Point, North Carolina areas.

2. Deny the allegations in paragraph 2, except admit that ALH II, Inc. ("ALH II") is a Delaware corporation and wholly-owned subsidiary of ALH, and that ALH II is a holding company that did not conduct its daily business activities in Delaware.

3. Admit the allegations in paragraph 3.

4. Deny the allegations in paragraph 4, except admit that Defendant SCA has no membership interest in ALH and that it is wholly owned by Shamrock, further admit that SCA and ALH are parties to a consulting agreement dated July 1, 2001 (the "Consulting Agreement"), and respectfully refer to the Consulting Agreement for its terms.

5. Deny the allegations in paragraph 5, except admit that Defendants Krieger, Buchler and Stein are employees of Shamrock, that since at least July 2001, Krieger and Buchler have served as Class A Representatives on ALH's Supervisory Board, and that in or around August 2001, Stein was designated as one of the two Class D Representatives on ALH's Supervisory Board.

6. Deny the allegations in paragraph 6.

7. Deny the allegations in paragraph 7.

8. Deny the allegations in paragraph 8.

9. Deny the allegations in paragraph 9.

10. Deny the allegations in paragraph 10.

11. Deny the allegations in paragraph 11.

12. Deny the allegations in paragraph 12.

13. Deny the allegations in paragraph 13.

14. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14, except admit on information and belief that Plaintiff Arenson Holdings is an Israeli corporation, that Arenson Holdings is a Class B member of ALH, that Arenson Holdings owns approximately 8% of the Class B membership interest in ALH, that the principal place of business of Arenson Holdings is in Israel, and that Arenson Holdings has transacted certain business in Delaware.

15. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15, except admit on information and belief that D.A. Gardens is a Class B member of ALH, that it owns approximately 8% of the Class B membership interest in ALH, and that it has transacted certain business in Delaware.

16. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16, except admit on information and belief that Plaintiff J12 is a New York general partnership, the general partners of which are Erica Jesselson and Jays Twelve, LLC, a Delaware limited liability company; that J12 is a Class B member of ALH; that J12 owns approximately 17% of the Class B membership interest in ALH; and that J12 has transacted certain business in Delaware.

17. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17, except admit on information and belief that Plaintiff SELK is a limited liability company organized under the laws of the state of Delaware, that SELK's members are Shalom Lamm and NACA Holding Inc. ("NACA"), that Shalom Lamm is a citizen of New York, that NACA was incorporated in the British Virgin Islands, that SELK was initially a Class B member of ALH owing approximately 33% if the Class B membership interest in ALH; and that SELK has transacted certain business in Delaware.

3

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, except admit on information and belief that Plaintiff Laurel is a limited liability company organized under the laws of the state of Delaware, that Laurel's members are Sallervale Company ("Sallervale"), Mark Frankel and Chesky Frankel, that Mark Frankel is a citizen of New Jersey, that Chesky Frankel is a citizen of New York, that Sallervale is a Bahamian corporation, that Laurel is a Class B member of ALH owning approximately 33% of the Class B membership interest in ALH, and that Laurel has transacted certain business in Delaware.

19.     Deny the allegations in paragraph 19, except admit that Defendant Shamrock is a California corporation, that it is engaged in business as an investor and as a sponsor of certain investment funds, that it has its principal place of business at 4444 Lakeside Drive, Burbank, California, and that it is indirectly wholly owned by the Roy E. Disney family.

20.     Deny the allegations in paragraph 20, except admit that Defendant SCA is a Delaware corporation wholly-owned by Shamrock, that it has its principal place of business at 4444 Lakeside Drive, Burbank, California, and that engages in merchant banking, investment advisory and related activities.

21.     Deny the allegations in paragraph 21, except admit that Defendant Krieger is Vice-Chairman and Chief Operating Officer of Shamrock, that he has performed substantial services for SCA, that he serves as a Class A Representative on ALH's Supervisory Board, that he is a citizen of the state of California, that he was at one time a director of Mulvaney Homes, Inc. ("MHI"), and that he has indirectly transacted certain business in North Carolina.

22.     Deny the allegations in paragraph 22, except admit that Defendant Buchler is President and Chief Executive of Shamrock's Real Estate Division, that he is a Vice President

4

and the Chief Financial Officer of Shamrock, that he has performed substantial services for SCA, that he serves as a Class A Representative on ALH's Supervisory Board, that he is a citizen of the state of California, that he was at one time a director of MHI, and that he has indirectly transacted certain business in North Carolina.

23. Deny the allegations in paragraph 23, except admit that Defendant Stein is Director of Real Estate for Shamrock, that he has performed substantial services for SCA, that he serves as one of the two Class D Representatives on ALH's Supervisory Board, that he is a citizen of the state of California, and that he has indirectly transacted certain business in North Carolina.

24. Deny the allegations in paragraph 24, except admit that Plaintiffs allege as follows: that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, that the amount in controversy exceeds $75,000, exclusive of interest and costs, that the dispute is between citizens of different states and foreign countries, and that this Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. § 1-75.4, N.C. Gen. Stat. § 1-75.6, N.C. Rules of Civ. Proc. § 1A-1 and Rule 4, and principles of common law; and Defendants further state that paragraph 24 asserts legal conclusions to which no answer is required.

25. Deny the allegation in paragraph 25.

26. Deny the allegations in paragraph 26, except admit that ALH's subsidiaries primarily built entry-level and move-up homes in the southeastern United States, and that, on information and belief, in 2000, in the Charlotte, North Carolina area, ALH's MHI subsidiary closed over 600 home sales.

27. Deny the allegations in paragraph 27, except admit that, in 1998, ALH acquired home-building operations in Jacksonville, Florida that operated under the name Atlantic Builders, Inc. ("ABI").

28. Deny the allegations in paragraph 28, except admit that, in 1999, ALH acquired home-building operations in Memphis, Tennessee that operated under the name Bowden Building Corporation ("BBC"), and that this acquisition was approved by ALH's Supervisory Board.

29. Deny the allegations in paragraph 29, except admit that, in 2000, ALH acquired home-building operations in Charlotte, North Carolina that operated under the name MHI, that this acquisition was approved by ALH's Supervisory Board, and that MHI was sold to Mattamy Homes Corporation ("Mattamy") in December 2004. Defendants are unable to respond to the sentence fragment in paragraph 29 that reads: "expanded into western North Carolina and operated in the Charlotte, Greensboro and Winston-Salem metropolitan areas."

30. Deny the allegations in paragraph 30, except admit that when ALH was first formed in June 1998, its Supervisory Board consisted of five members (two designated by ALH's Class A members, one designated by ALH's Class B members and two designated by ALH's Class D member), that ALH's Board has always consisted of five members, that the Class B members have at all times had one Class Representative, that "Major Decisions" as defined in ALH's Operating Agreement require a majority vote of the Supervisory Board as well as the consent of the two Class A Representatives designated pursuant to the Operating Agreement, and that certain other decisions are made by majority vote of the Supervisory Board.

31. Admit the allegations in paragraph 31.

32. Admit the allegations in paragraph 32.

33. Deny the allegations in paragraph 33.

34. Deny the allegations in paragraph 34.

35. Deny the allegations in paragraph 35, except admit that, since in or around August 2001, following the Supervisory Board's unanimous approval of the settlement between ALH and Lamm and certain of Lamm's affiliates and their employees (the "Lion LLC Settlement"), three of the five members of ALH's Supervisory Board have been Shamrock employees.

36. Deny the allegation in paragraph 36.

37. Deny the allegations in paragraph 37, except admit that ALH and SCA are parties to the Consulting Agreement and respectfully refer to the Consulting Agreement for its terms.

38. Deny the allegations in paragraph 38, except admit that Krieger, Buchler, and Stein have all done substantial work for SCA, that they are highly placed officers in Shamrock, and that in various capacities and circumstances they have had various fiduciary duties to certain persons and entities; and further admit that Krieger and Buchler are Class A Representatives on ALH's Supervisory Board, and that SCA is wholly owned by Shamrock.

39. Deny the allegations in paragraph 39, except admit that the law firm of Fried, Frank, Harris, Shriver & Jacobson, LLP ("Fried Frank") has from time to time represented Shamrock and SCA and that, pursuant to certain conflict waivers, Fried Frank has represented ALH on certain matters.

40. Deny the allegations in paragraph 40.

41. Deny the allegations in paragraph 41, except admit that certain ALH members made loans to ALH II pursuant to a loan agreement dated April 6, 2002 (the "2000 Loan Agreement") and that the loans were guaranteed by certain ALH II subsidiaries, and respectfully refer to the 2000 Loan Agreement for its terms.

7

42. Deny the allegations in paragraph 42, except admit that certain ALH members made loans to ALH II pursuant to a loan agreement dated May 7, 2002 (the "2002 Loan Agreement"), and respectfully refer to the 2000 Loan Agreement for its terms.

43. Admit the allegations in paragraph 43.

44. Deny the allegations in paragraph 44 and further state that the averments in paragraph 44 with respect to insolvency and preferences assert legal conclusions to which no answer is required.

45. Deny the allegations in paragraph 45, except admit that in February 2003, Avie Arenson ("Arenson"), who is the Class B Representative on ALH's Supervisory Board and who owns and controls Plaintiffs Arenson Holdings and D.A. Gardens, and Isaac M. Neuberger, Esq. ("Neuberger"), who identified himself as counsel to all of the Class B Members (*i.e.*, all of the Plaintiffs), met with Krieger and Buchler in Charlotte, North Carolina.

46. Deny the allegations in paragraph 46, except admit that, at the February 2003 meeting, Arenson and Neuberger discussed the possibility of the Class B Members buying out the Class A Members' equity in ALH.

47. Deny the allegations in paragraph 47, except admit that, at the May 14, 2003 meeting of ALH's Supervisory Board, among other things, various efforts to sell ALH and its operations were discussed.

48. Deny the allegations in paragraph 48, except admit that, at the June 26, 2003 meeting of ALH's Supervisory Board, among other things, ALH's outside investment banking/financial advisory expert presented an overview of its efforts to find purchasers for ALH's various subsidiaries and assets; that Fried Frank, as outside counsel to ALH, made a presentation concerning the terms of a proposed agreement for the sale of ABI; and that Arenson

questioned whether it would be better for ALH to raise additional equity rather than sell the assets of ALH.

49. Deny the allegations in paragraph 49, except admit that, in response to Arenson's question referred to above, Buchler pointed out that (1) ABI had pressing liquidity needs it would be unable to meet in the near future, (2) the consummation of the sale of ABI would permit the conclusion of the settlement of certain pending litigation that had arisen in connection with the purchase of BBC, and (3) no other proposals for funding or acquiring ABI, including proposals from the Class B Members or Arenson himself, had been made.

50. Deny the allegations in paragraph 50, except admit that after further review and discussion of various matters, the Supervisory Board voted in favor of the sale of ABI, with Arenson voting against the sale and Lamm abstaining, and that the proceeds of the sale were used, in part, to pay off the loans under the 2000 and 2002 Loan Agreements.

51. Deny the allegations in paragraph 51, except admit that, at the March 24, 2004 meeting of ALH's Supervisory Board, among other things, ALH considered the proposed sale of 100% of the stock of BBC, that Buchler gave an overview of the economic terms of the proposed transaction, and that Fried Frank, as counsel to ALH, made a presentation regarding the terms of the proposed purchase agreement.

52. Deny the allegations in paragraph 52, except admit that, at the March 24, 2004 meeting of ALH's Supervisory Board, among other things, the Board discussed the merits of the proposed BBC sale, that Arenson stated that he opposed the sale of BBC for the same reasons he had expressed in connection with the sale of ABI, and that Arenson expressed a concern that the sale was not in the best interests of all of ALH's Members and that better value might be obtained by continuing to operate BBC.

53. Deny the allegations in paragraph 53, except admit that, at the March 24, 2004 meeting of ALH's Supervisory Board, among other things, Arenson expressed a concern that there might be a conflict of interest on the part of Fried Frank because Fried Frank also represented Shamrock, that Fried Frank explained that it was representing ALH and the Supervisory Board in connection with the possible sale of BBC and not ALH's members separately, that Fried Frank noted that ALH had waived any potential conflict of interest and that the waiver had been approved by the Supervisory Board prior to Fried Frank's representation of ALH, and that Fried Frank invited the Supervisory Board Representatives to contact Fried Frank or its Tennessee co-counsel with any concerns or questions.

54. Deny the allegations in paragraph 54, except admit that after further discussion of various matters, the Supervisory Board voted in favor of the proposed sale of BBC, with Arenson and Lamm both voting against the sale.

55. Deny the allegations in paragraph 55, except admit that the proceeds of the BBC sale were used in ALH's operations.

56. Admit the allegations in paragraph 56.

57. Deny the allegations in paragraph 57.

58. Deny the allegations in paragraph 58, except admit that, at the time of the sale of ABI in 2003, William Lanius ("Lanius") was the Chief Financial Officer of ALH II; that after the sale of ABI, Lanius became the President of ABI's acquiror, Mattamy; and that all of the Class Representatives on the Supervisory Board supported retaining Lanius as a consultant to advise ALH on various management and financial matters and assist as appropriate in any further sales of ALH's assets.

59. Deny the allegations in paragraph 59, except admit that in his capacity as consultant for ALH, Lanius was participated in negotiations with potential buyers of ALH's operations and ALH's lenders, including Wachovia N.A. and Ohio Savings Bank, and with Swiss Re as surety on the Wachovia loan.

60. Deny the allegations in paragraph 60, except admit that in the summer of 2004, ALH and Levitt Homes ("Levitt") entered into a letter of intent for the sale of MHI, and that, at that time, the President of Levitt was John LaGuardia ("LaGuardia"), the former President of ALH II.

61. Deny the allegations in paragraph 61, except admit that Lanius, in his capacity as consultant for ALH, participated in negotiations with Wachovia and the surety on the Wachovia loan, Swiss Re, including a proposed forbearance agreement with Wachovia, and respectfully refer to the August 22-24, 2004 emails from Lanius to Buchler and from Buchler to the ALH Supervisory Board for their contents.

62. Deny the allegations in paragraph 62, except admit that, among other things, Lanius participated in the negotiations pursuant to which $1 million of the proceeds of the sale of MHI to Levitt would be received by ALH.

63. Deny the allegations in paragraph 63, except admit that, on or around October 6, 2004, Levitt informed ALH that it would not proceed with the purchase of MHI, and respectfully refer to Buchler's October 6, 2004 email to ALH's Supervisory Board for its contents.

64. Deny the allegations in paragraph 64, except admit that Lanius was working for Mattamy at the time that Mattamy expressed an interest in purchasing MHI, and respectfully refer to Buchler's October 6, 2004 email to ALH's Supervisory Board for its contents.

11

65. Deny the allegations in paragraph 65 and respectfully refer to Mattamy's October 22, 2004 letter for its contents.

66. Deny the allegations in paragraph 66, except admit that between October 6 and 22, 2004, other buyers for MHI were not solicited because, among other things, all possible buyers had already been explored.

67. Deny the allegations in paragraph 67.

68. Deny the allegations in paragraph 68.

69. Deny the allegations in paragraph 69, except admit that, in December 2004, Mattamy and ALH II entered into a Stock Purchase Agreement under which Mattamy would acquire the stock of MHI and $1 million of the proceeds of the sale of MHI would be received by ALH.

70. Deny the allegations in paragraph 70.

71. Deny the allegations in paragraph 71.

**COUNT ONE – BREACH OF FIDUCIARY DUTY**

72. Defendants reallege their responses to paragraphs 1 through 71 and incorporate them by reference as if fully set forth herein.

73. Deny the allegations in paragraph 73.

74. Deny the allegations in paragraph 74.

75. Deny the allegations in paragraph 75.

76. Deny the allegations in paragraph 76.

77. Deny the allegations in paragraph 77.

78. Deny the allegations in paragraph 78.

79. Deny the allegations in paragraph 79.

80. Deny the allegations in paragraph 80.

### COUNT TWO – BREACH OF OPERATING AGREEMENT

81. Defendants reallege their responses to paragraphs 1 through 80 and incorporate them by reference as if fully set forth herein.

82. Deny the allegations in paragraph 82.

83. Deny the allegations in paragraph 83, except respectfully refer to the Operating Agreement for its terms.

84. Deny the allegations in paragraph 84.

85. Deny the allegations in paragraph 85.

86. Deny the allegations in paragraph 86.

87. Deny the allegations in paragraph 87.

### COUNT THREE – BREACH OF CONSULTING AGREEMENT

88. Defendants reallege their responses to paragraphs 1 through 87 and incorporate them by reference as if fully set forth herein.

89. Deny the allegations in paragraph 89.

90. Deny the allegations in paragraph 90, except respectfully refer to the Consulting Agreement for its terms.

91. Deny the allegations in paragraph 91.

92. Deny the allegations in paragraph 92.

93. Deny the allegations in paragraph 93.

94. Deny the allegations in paragraph 94.

## COUNT FOUR – GROSS NEGLIGENCE

95. Defendants reallege their responses to paragraphs 1 through 94 and incorporate them by reference as if fully set forth herein.

96. Deny the allegations in paragraph 96.

97. Deny the allegations in paragraph 97.

98. Deny the allegations in paragraph 98.

99. Deny the allegations in paragraph 99.

100. Deny the allegations in paragraph 100.

101. Deny the allegations in paragraph 101.

102. Deny the allegations in paragraph 102.

## COUNT FIVE – SELF-DEALING

103. Defendants reallege their responses to paragraphs 1 through 102 and incorporate them by reference as if fully set forth herein.

104. Deny the allegations in paragraph 104.

105. Deny the allegations in paragraph 105.

106. Deny the allegations in paragraph 106, except admit that the sales of ALH's operations were duly approved by majority vote of ALH's Supervisory Board.

107. Deny the allegations in paragraph 107.

108. Deny the allegations in paragraph 108.

## COUNT SIX – CIVIL CONSPIRACY

109. Defendants reallege their responses to paragraphs 1 through 108 and incorporate them by reference as if fully set forth herein.

110. Deny the allegations in paragraph 110.

111. Deny the allegations in paragraph 111.

112. Deny the allegation in paragraph 112.

## FIRST AFFIRMATIVE DEFENSE

113. The Complaint should be dismissed for lack of subject matter jurisdiction.

## SECOND AFFIRMATIVE DEFENSE

114. The Complaint should be dismissed due to Plaintiffs' lack of standing.

## THIRD AFFIRMATIVE DEFENSE

115. The Complaint fails to state a claim against Defendants on which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

116. The Complaint should be dismissed for lack of personal jurisdiction.

## FIFTH AFFIRMATIVE DEFENSE

117. The Complaint should be dismissed for lack of proper venue.

## SIXTH AFFIRMATIVE DEFENSE

118. The claims in the Complaint are barred by the applicable statutes of limitations and/or by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

119. The claims in the Complaint are barred by the doctrines of waiver, estoppel, collateral estoppel, judicial estoppel and/or ratification.

## EIGHTH AFFIRMATIVE DEFENSE

120. The claims in the Complaint are barred by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

121. The claims in the Complaint are barred, in whole or part, by the business judgment rule.

**TENTH AFFIRMATIVE DEFENSE**

122. Plaintiffs' damages, if any, were not proximately caused by any conduct of Defendants.

**ELEVENTH AFFIRMATIVE DEFENSE**

123. Defendants reserve the right to assert additional affirmative defenses in the event that discovery reveals they are appropriate.

WHEREFORE, Defendants, having fully responded to Plaintiffs' Complaint as fully as they are advised it is their duty, pray the Court:

1. That the Court dismiss the Complaint with prejudice;

2. That the Plaintiffs have and recover nothing of Defendants;

3. For an award of costs and attorneys' fees as provided by applicable law;

4. For a jury trial of those issues so triable;

5. That the Court grant such other and further relief as it deems just and proper.

This the 10th day of November 2005

/s/ J. Donald Cowan, Jr.
J. Donald Cowan, Jr.
N.C. State Bar No. 0968

OF COUNSEL:
SMITH MOORE LLP
Post Office Box 21927 (27420)
300 North Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

OF COUNSEL:
Pamela Jarvis
GREGORY P. JOSEPH LAW OFFICES LLC
 805 Third Avenue, 31st Floor
New York, New York  10022
Telephone:  (212) 407-1250
Facsimile:  (212) 407-1278

*Attorneys for Defendants Shamrock Holdings
of California, Inc., Shamrock Capital Advisors,
Inc., Eugene I. Krieger, George J. Buchler,
and Bruce J. Stein*

Case 3:05-cv-00620-SRU Document 122-39 Filed 10/20/2005 Page 17 of 18

17

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing Answer has been served by United States mail, first-class, postage prepaid, to the following counsel of record:

Russ A. Brinson
Tracy L. Eggleston
Cozen O'Connor
One Wachovia Center, Suite 2100
301 South College Street
Charlotte, North Carolina 28302

Thomas M. Wood, IV
Neuberger, Quinn, Gielen, Rubin & Gibber
One South Street, 27th Floor
Baltimore, Maryland 21202-3282

This the 10th day of November, 2005.

                              /s/ J. Donald Cowan, Jr.
                              J. Donald Cowan, Jr.