IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 3:05CV256-H

| | |
|---|---|
| A. ARENSON HOLDINGS, LTD., D.A. GARDENS, LTD., J12ALH ASSOCIATES, SELK, LLC and LAUREL EQUITY GROUP, LLC,<br><br>  Plaintiffs,<br><br> v.<br><br>SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN,<br><br>  Defendants. | **REPLY DECLARATION OF GEORGE J. BUCHLER IN SUPPORT OF MOTION TO DISMISS OR TRANSFER** |

**GEORGE J. BUCHLER** declares pursuant to 28 U.S.C. § 1746 that:

1. I am one of the Defendants in the above-captioned action. I submit this reply declaration on behalf of Defendants Shamrock Holdings of California, Inc. ("Shamrock"), Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), Bruce J. Stein ("Stein"), and myself, in support of our motion to dismiss the Complaint in the above-captioned action or, alternatively, to transfer this action to the United States District Court for the District of Delaware ("Defendants' Motion").[1] Unless otherwise indicated, I have personal knowledge of the matters set forth in this Declaration, and as to such other matters, I believe that the statements herein are true.

2. I have reviewed the October 12, 2005 Declaration of Shalom E. Lamm ("Lamm") filed in support of Plaintiffs' Opposition to Defendants' Motion (the "Lamm

---

[1] This Declaration is not submitted in support of Defendants' motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. Rule 12(b)(6).

Declaration"). Paragraph 6 of the Lamm Declaration states that Lion ALH Capital, LLC ("Lion LLC"), was "stripped of its power" under the Operating Agreement of ALH Holdings, LLC ("ALH"). This is untrue.

3. When ALH was first formed in June 1998, its Supervisory Board consisted of five Representatives: two designated by investors in ALH's Class A equity (the "Class A Members"), one designated by investors in ALH's Class B equity (the "Class B Members"), and two designated by the investor in ALH's Class D equity (the "Class D Member"). From the outset, I was a Class A Representative and Avie Arenson ("Arenson") was the Class B Representative. In or around late 1999/early 2000, Krieger became a Class A Representative, replacing the Shamrock employee who previously held that position.

4. Lion ALH Capital LLC ("Lion LLC"), a Delaware limited liability company, was the Class D Member of ALH. Originally, the Class D Member's Representatives on ALH's Supervisory Board were Lamm and Jonathan Zich, who worked for Lamm.

5. By early 2001, both the Class A and Class B Members of ALH were extremely dissatisfied with the performance of Lion LLC as Manager of ALH under § 6.1(a) of ALH's Operating Agreement. The Class A and Class B Members of ALH believed that Lion LLC, Lamm and certain of their associates owed ALH millions of dollars in misappropriated and/or misused funds and unauthorized expenditures.

6. In or around July 2001, ALH reached a settlement with Lion LLC, Lamm and certain of their associates (the "Lion LLC Settlement"). Pursuant to the Lion LLC

Settlement, Lion LLC, Lamm and certain of their associates signed confessions of judgment and agreed to pay approximately $2 million dollars to ALH.

7. The Lion LLC Settlement substantially decreased the influence of Lion LLC, Lamm and their associates over ALH by, among other things: (a) allowing the Class A Members to designate one of the two Class D Representatives on ALH's Supervisory Board, (b) providing that SCA would render consulting services to ALH, (c) making me a member of the board of directors of each subsidiary of ALH II, Inc. (a Delaware corporation that was wholly owned by ALH), and (d) establishing an Audit Committee, the members of which would be the two Class A Representatives (Krieger and myself) and the Class B Representative (Arenson). All of the Class Representatives on ALH's Supervisory Board, including Arenson and Lion LLC, approved the Lion LLC Settlement. Neither the negotiation nor the consummation of the Lion LLC Settlement occurred in North Carolina.

8. From time to time, Krieger, Stein and I visited North Carolina in connection with ALH. When Krieger visited North Carolina in connection with ALH, he generally did so in his capacity as one of the Class A Representatives on ALH's Supervisory Board. When I visited North Carolina in connection with ALH, I sometimes did so in my capacity as one of the Class A Representatives on ALH's Supervisory Board and sometimes did so in connection with SCA's activities as consultant to ALH, of which Mulvaney Homes, Inc. ("MHI") was a subsidiary. When Stein visited North Carolina in connection with ALH, he generally did so in connection with SCA's activities as

consultant to ALH. Contrary to the assertion in ¶ 8 of the Lamm Declaration, SCA has no employees.

9. In February 2003, Arenson (who owns and controls Plaintiffs Arenson Holdings and D.A. Gardens, in addition to being the Class B Representative on ALH's Supervisory Board) and Isaac M. Neuberger ("Neuberger"), who identified himself as counsel to all of the Class B Members (*i.e.*, all of the Plaintiffs), met with Krieger and me in Charlotte, North Carolina. Paragraph 9 of the Lamm Declaration states that Stein was present at this meeting, but this is incorrect.

10. At the February 2003 meeting, Krieger and/or I stated that we had been devoting substantial time, energy and effort to ALH. Contrary to the statement in ¶ 9 of the Lamm Declaration, neither of us stated, in words or substance, that we wished to shut down ALH's operations or that we desired to sell off ALH's operating units in piecemeal fashion. At the February 2003 meeting, Arenson and Neuberger discussed the possibility of the Class B Members buying out the Class A Members' equity in ALH.

11. I understand that Plaintiffs have suggested that Arenson did not participate in the December 15, 2004 ALH Board meeting concerning whether to sell MHI because that would have involved his traveling from Israel to the United States. In fact, Arenson attended most ALH Board meetings by telephone. Arenson initially confirmed to me that he would be attending the December 15, 2004 meeting by telephone, but the night before the meeting, Arenson stated that he would not attend.

12. I understand that Plaintiffs have asserted that ALH is in the process of winding up. This is untrue.

I declare under penalty of perjury that the foregoing is true and correct. Executed in <u>LOS ANGELES</u>, this <u>14TH</u> day of November, 2005.

_____
George J. Buchler