IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 04-1339-SLR |
| AVIE ARENSON, SELK, LLC, LAUREL EQUITY GROUP, LLC, J12ALH ASSOCIATES, A. ARENSON HOLDINGS, LTD AND D.A. GARDENS, LTD, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| A. ARENSON HOLDINGS, LTD., D.A. GARDENS, LTD., J12ALH ASSOCIATES, SELK, LLC, LAUREL EQUITY GROUP, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-62-SLR |
| SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN, | ) ) ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF PAMELA JARVIS IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS
## AND DISMISSAL OF THE COUNTERCLAIMS

OF COUNSEL:

Gregory P. Joseph Law Offices LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
New York, NY 10022
(212) 407-1200

February 28, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
Wilmington, DE 19899
302-658-9200
    *Attorneys for Plaintiffs and Counterclaim*
    *Defendants and Third-Party Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 04- 1339-SLR |
| v. | ) ) ) | |
| AVIE ARENSON, SELK, LLC, LAUREL EQUITY GROUP, LLC, J12ALH ASSOCIATES, A. ARENSON HOLDINGS, LTD. AND D.A. GARDENS, LTD., | ) ) ) ) ) | |
| Defendants. | | |

### DECLARATION OF PAMELA JARVIS IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSAL OF COUNTERCLAIMS

**PAMELA JARVIS** declares pursuant to 28 U.S.C. § 1746 that:

1.     I am a partner in the law firm of GREGORY P. JOSEPH LAW OFFICES LLC. I submit this declaration on behalf of Plaintiffs and Counterclaim Defendants Shamrock Holdings of California, Inc. ("Shamrock"), Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), George J. Buchler ("Buchler") and Bruce J. Stein, in support of their motion judgment on the pleadings, or alternatively, for dismissal of the counterclaims for lack of subject matter jurisdiction and failure to state a claim. This declaration is also submitted on behalf of Third-Party Defendant ALH Holdings, LLC ("ALH"). I have personal knowledge of the matters set forth in this declaration

2.     Annexed as Exhibit A hereto is a true and correct copy of a December 17, 2991 letter from Fried, Frank, Harris Shriver & Jacobson to ALH and Shamrock.

3.     Annexed as Exhibit B hereto is a true and correct copy of an April 15, 2003 email from Buchler to Avie Arenson ("Arenson").

4.      Annexed as Exhibit C hereto is a true and correct copy of a May 5, 2003 email from Isaac M. Neuberger, Esq. to Krieger and Buchler.

5.      Annexed as Exhibit D hereto is a true and correct copy of an August 1, 2002 email from Arenson to Buchler and Krieger.

6.      Annexed as Exhibit E hereto is a true and correct copy of an April 9, 2003 email from Buchler to Arenson.

7.      Annexed as Exhibit F hereto is a true and correct copy of a September 12, 2003 email from Arenson to Buchler and Krieger.

8.      Annexed as Exhibit G hereto is a true and correct copy of a December 18, 2002 email from Arenson to Krieger and Buchler.

9.      The foregoing documents are relied on in the Counterclaims and Third-Party Complaint filed by the Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs herein.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on February 28, 2006.

_____
PAMELA JARVIS

/580409v1

<u>CERTIFICATE OF SERVICE</u>

I, S. Mark Hurd, hereby certify that on February 28th, 2006 I electronically filed

the DECLARATION OF PAMELA JARVIS IN SUPPORT OF MOTION FOR JUDGMENT

ON THE PLEADINGS AND DISMISSAL OF COUNTERCLAIMS which will send

notification of such filing(s) to the following:

> Sean J. Bellew, Esq.
> David A. Felice, Esq.
> Cozen O'Connor
> 1201 North Market Street, Suite 1400
> Wilmington, DE 19801

S. Mark Hurd (#3297)

# Exhibit A

Fried, Frank, Harris, Shriver & Jacobson
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071
Tel: 213.473.2000
Fax: 213.473.2222
www.ffhsj.com

Direct Phone:  213.473.2005
robbida@ffhsj.com

December 17, 2001

ALH Holdings LLC
489 Fifth Avenue
New York, NY  10017
Attention:  Shalom E. Lamm

Shamrock Holdings of California, Inc.
4444 Lakeside Drive, 2nd Floor
Burbank, CA 91505
Attention: George J. Buchler

Re:　　**ALH Holdings LLC**

Gentlemen:

　　This letter will confirm that ALH Holdings LLC ("ALH") has asked Fried, Frank, Harris, Shriver & Jacobson ("Fried Frank") to advise it regarding the possible sale of ALH II, Inc., a Delaware corporation ("ALH II"), or all or substantially all of the assets of ALH II and its subsidiaries (the "ALH Representation").

　　As you are aware, Fried Frank (i) has been retained by ALH as previously described in our August 10, 2001 letter and also only for the limited purpose of the ALH Representation, (ii) represented Shamrock Holdings of California, Inc. and its affiliates (collectively, "Shamrock") in connection with Shamrock's investment in the Class A Membership Interests (as defined in the Operating Agreement) of ALH and (iii) may in the future represent Shamrock in various other matters, including, without limitation, in connection with Shamrock's investment in ALH and other matters which may be adverse to ALH.

　　You have previously acknowledged and agreed that the interests of ALH with respect to the ALH Representation are consistent with the interests of Shamrock and do not give rise to any conflict of interest.  In accordance with California Rules of Professional Conduct Rule 3-310 (copy attached), we are requesting the written consent of ALH and Shamrock in order to act for ALH in this matter.



A Partnership
Including
Professional
Corporations

New York
Washington
Los Angeles
London
Paris

75379

Fried, Frank, Harris, Shriver & Jacobson

ALH Holdings LLC
December 17, 2001
Page 2

It is agreed and understood that Fried Frank can continue to represent and act for Shamrock as set forth above.

If you have any questions concerning this matter please feel free to call me. In deciding whether to consent to the representation and waive any conflict you should not hesitate to consult separate counsel.

If you determine to consent, please confirm your agreement to do so by signing and returning the enclosed copy of this letter.

Very truly yours,

David K. Robbins

Agreed and consented to by:

ALH HOLDINGS LLC

By:    LION ALH CAPITAL, LLC, its Manager

By: _____
     Shalom E. Lamm, its duly
     authorized signatory


SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _____
     George J. Buchler, Vice President and
     Assistant Secretary

73161

# Rule 3-310. Avoiding the Representation of Adverse Interests

(A) For purposes of this rule:

(1) "Disclosure" means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;

(2) "Informed written consent" means the client's or former client's written agreement to the representation following written disclosure;

(3) "Written" means any writing as defined in Evidence Code section 250.

(B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:

(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

(2) The member knows or reasonably should know that:

(a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and

(b) the previous relationship would substantially affect the member's representation; or

(3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or

(4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.

(C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

(D) A member who represents two or more clients shall not enter into an aggregate settlement of the claims of or against the clients without the informed written consent of each client.

(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

(F) A member shall not accept compensation for representing a client from one other than the client unless:

(1) There is no interference with the member's independence of professional judgment or with the client-lawyer relationship; and

(2) Information relating to representation of the client is protected as required by Business and Professions Code section 6068, subdivision (e); and

(3) The member obtains the client's informed written consent, provided that no disclosure or consent is required if:

(a) such nondisclosure is otherwise authorized by law; or

(b) the member is rendering legal services on behalf of any public agency which provides legal services to other public agencies or the public.

73136

# Exhibit B

**From:** George Buchler

**Sent:** Tuesday, April 15, 2003 10:49 AM

**To:** Avie Arenson (E-mail); Shalom Lamm (E-mail)

**Cc:** Gene Krieger; Bruce Stein

**Subject:** Atlantic Builders Sale

Dear Avie and Shalom,

After several weeks of intensive negotiations and consideration of all proposals to acquire ABI, Mattamy's bid proved to be the strongest. A non-binding term sheet has been executed. They offered the most money $17MM (possibly $17.5MM if some tax issues can be resolved), all cash at closing instead of an earnout, and both Gene and I believe that they are a "real" buyer. They will commence due diligence almost immediately and the closing should occur by June 30. We should try to keep this arrangement as confidential as possible. We do not want the losing bidders (MDC and Toll) to be aware of who the winner is and at what price.

As you know, Mattamy very much wants to employ both Bill Holt and Bill Lanius. While we're sorry to lose Bill Lanius, this is an excellent opportunity for his career and will allow him to stay in Jacksonville, which both he and his wife very much want to do. We are therefore willing to release Bill from his contract to pursue this opportunity. Mattamy has agreed to cooperate with us in assuring that Bill's departure causes a minimum of disruption.

The funds received from this sale are sorely needed by ALH. The transaction will allow repayment of shareholder loans, give us the ability to resolve the Bowden litigation and have some additional capital to help us either improve the profitability of Mulvaney and Bowden or be held in reserve for the Swiss Re obligation.

Please let me know if I can answer any questions regarding the deal..

# Exhibit C

## Gene Krieger

**From:** Gene Krieger

**Sent:** Thursday, May 08, 2003 3:28 PM

**To:** 'Isaac M. Neuberger'

**Cc:** 'Michael G. Jesselson (E-mail)'; 'Michel Konig (E-mail)'; 'Arenson Avie'; George Buchler

**Subject:** RE: ALHII-

Dear Isaac:

This is in response to your May 5th email, below. I do not believe it productive for me to respond on a point by point basis, but I do want to let you know that I disagree with a number of the items in your message. The issues raised in your email, as well as the reasons and terms for any potential sale, will be discussed at the next meeting of the Supervisory Board to be held next week. To the extent your clients have any questions, suggestions or concerns, I encourage them to have Avie raise them at that meeting.

Sincerely,

Gene

> -----Original Message-----
> **From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
> **Sent:** Monday, May 05, 2003 12:54 PM
> **To:** Gene Krieger; George Buchler
> **Cc:** Michael G. Jesselson (E-mail); Michel Konig (E-mail); Arenson Avie
> **Subject:** RE: ALHII-

I write to you again on behalf of the Class B Investors. They feel very strongly that the proposed sale of Jacksonville is NOT in the best interests of ALH for a number of reasons. They fear that the remaining divisions in N.C. and Memphis do not generate sufficient cash flow to support the ALH operations and that as a consequence, a forced sale of NC and/or Memphis today will result is a complete write-off of the equity in ALH. This is all the more troubling, since it appears that the motivation, in seeking a sale NOW is being driven solely by Shamrock's stated intention to exit this investment and to be able to be repaid the advances that it ( and we) have made, regardless of the long term impact that this strategy may have on ALH.

We also understand that the auditors are considering a "going concern" caveat to their opinion, which will cast a further cloud on ALH's continued viability. The Jacksonville operation is such a key contributor to ALH's bottom line that we urge you to carefully consider this approach.

We all understand that Shamrock controls. With this control goes certain fiduciary obligations. We appreciate the desire and interest to "salvage" your loans, but we also feel that by doing what we understand you propose to do NOW, that while your loans (and ours) may be repaid, that it will threaten ALH's continued survival and will jeopardize our investment.

We think that recommendation that we hear from Messrs. LaGuardia and Lanius that "stay the course" is imperative and that Shamrock's desire to exit notwithstanding, that we do what Management has advised.

As we have repeated many times, we think that we need to continue the operations as is and that we need to withdraw ALH and its component entities from the "block", as a continuation of what is clearly a "busted auction" is only hurting the Company.

11/1/2004

Very truly yours.

**********************************
CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a
communication protected by the attorney-client privilege. If you are not the intended recipient or a person
responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or
copying of this communication or its contents is strictly prohibited. If you have received this communication in
error, please notify us immediately by telephone at (410) 332-8550.
**********************************

11/1/2004

# Exhibit D

| From: | George Buchler |
|---|---|
| Sent: | Friday, August 02, 2002 6:43 PM |
| To: | 'Arenson Avie' |
| Cc: | Gene Krieger |
| Subject: | RE: Bowden |

Thank you for your note and also the thoughts you conveyed to us on our recent phone call. Let me try to clarify the direction in which we're going and some of the assumptions we're making --

    1. Gene and I met today with Tony Avila. The Bowden transaction, if it were to go forward as presently contemplated, would generate a minimum of $6MM of cash, after payment of the debt and the Bowden costs. There is a possibility that this amount could be higher - perhaps as much as $8MM. Obviously, this is a substantial sum of money and would relieve some of the ongoing liquidity issues at ALH, and also dispose of the ugly Bowden litigation.

    2. We are executing the Exclusivity Letter with Walter Industries. The agreement only gives them a period of exclusivity in which to do their due diligence. By no means, have we entered into an agreement or made a commitment to sell Bowden. Indeed, they are not obligated to provide even an initial draft of the Purchase Contract for 45 days.

    3. Gene and I would very much like to see you and the other "B" investors proceed with the process of purchasing the interests of the "A" investors. The Walter Exclusivity Letter does not prevent you from proceeding. If the time frame for your group moving is indeed "weeks" as you suggested in your earlier e-mail, we can certainly accommodate you. Your group may even want us to proceed with a sale of Bowden which would provide substantial cash to ALH, as this would lessen your capital needs.

Gene and I appreciate your input and value your opinion on ALH. We have enjoyed our association as investors and directors. We hope that you can indeed purchase our interests in the very near term and that you then enjoy much success at ALH.

Gene and I are both available next week to discuss this further, if you wish. Sorry for catching you last week at home after you had had a rough business and travel schedule.

Sincerely,


George


-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Thursday, August 01, 2002 2:14 AM
To: George Buchler; Gene Krieger
Cc: Shalom Lamm; isaac m. neuberger
Subject: bowden

    Hello George and Gene:

    These are the estimates of the incremental sale of the divisions. I think it decisively, shows that we would be in a lose-lose situation if we went this path. Please get back to me.

B00029

| | | |
|---|---|---|
| Bowden Sale: | $ | 19,000,000 |
| 1.50% costs of trans: | $ | 285,000 |
| Net Sale: | $ | 18,715,000 |
| | | |
| Inventory Loans: | $ | 9,452,800 |
| Bowden Litigation: | $ | 4,000,000 |
| | | |
| Total Net Proceeds: | $ | 5,262,200 |
| | | |
| ABI Sale: | $ | 30,000,000 |
| 1.50% costs of trans: | $ | 450,000 |
| Net Sale: | $ | 29,550,000 |
| | | |
| Inventory Loans: | $ | 12,295,244 |
| | | |
| Total Net Proceeds: | $ | 17,254,756 |
| | | |
| From 2 Sales: | | |
| Pay Down of Debt/Obligations: | $ | 25,748,044 |
| Net Cash from Sales: | $ | 22,516,956 |
| | | |
| Pay Down Swiss Re: | $ | 20,000,000 |
| Balance for MHI ops/LGA: | $ | 2,516,956 |
| | | |
| Obligations Remaining: | | |
| Swiss Re: Deb | $ | 7,500,000 |

B00030

| | | |
|---|---|---|
| MHI Inventory Debt: | $ | 27,210,000 |
| DA Gardens/Shamrock Loan: | $ | 1,187,499 |
| Investor Loan: | $ | 4,354,200 |
| Total Debt Load: | $ | 40,251,699 |

best regards

Avie

B00031

# Exhibit E

## George Buchler

| | |
|---|---|
| **From:** | George Buchler |
| **Sent:** | Wednesday, April 09, 2003 8:13 AM |
| **To:** | 'Arenson Avie' |
| **Cc:** | Gene Krieger |
| **Subject:** | RE: Summary of Proposals for ABI |

Let me try to respond to your concerns --

1. The Bill Lanius requirement is contained in one of the three offers that we are currently negotiating. At this point, since we don't even know which offer will be accepted, it is premature to debate this issue.

2. As you know, ALH has a severe liquidity crisis - pending litigation, inability to take down huge land positions in Florida, Swiss Re/Wachovia debt, etc. To provide some liquidity, ABI is being sold. If you or any of the other "B" investors can propose an alternative solution, as always, we're ready to listen. As we were unsuccessful in selling the company intact, selling it piecemeal appears to be the only other alternative to meet ALH's obligations.

As we get closer to accepting one of the offers, we'll keep you informed.

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Tuesday, April 08, 2003 1:50 AM
To: George J. Buchler (George Buchler)
Subject: Fw: Summary of Proposals for ABI


----- Original Message -----
From: "Arenson Avie" <avie@arenson.co.il>
To: "Shalom Lamm" <slamm@lionlamm.com>

Sent: Tuesday, April 08, 2003 10:48 AM
Subject: Re: Summary of Proposals for ABI


> Hello Shalom:
>
> Any deal which involves losing  Bill Lanius is  absolutely
> unacceptable.
> An
> improved Toll is probably the best offer of the three bad offers.. If
> the majority of the Board decides so,  Personally  I  think that it is
> not in the best interests of ALHII to  sell itself piecemeal.
>
> Avie
> ----- Original Message -----
> From: "Shalom Lamm" <slamm@lionlamm.com>
> To: "Arenson Avie" <avie@arenson.co.il>
> Sent: Monday, April 07, 2003 6:19 PM
> Subject: FW: Summary of Proposals for ABI
>
>
> > Please read below. Any thoughts?
> >
> > --
> > Shalom Lamm
> > Phone: 516-565-0868
> > fax: 516-565-1819
> > cell: 917-282-7375

1

```
> >
> > ----------
> > From: "Anthony Avila" <tavila@jmpsecurities.com>
> > Reply-To: "Anthony Avila" <tavila@jmpsecurities.com>
> > Date: Mon, 7 Apr 2003 11:33:00 -0400
> > To: slamm@lionlamm.com
> > Cc: shaynes@jmpsecurities.com
> > Subject: Summary of Proposals for ABI
> >
> > Gentlemen,
> >
> > Here is the summary of proposals from 3 interested parties:
> >
> > Mattamy: $16mm at closing, 50pct of premium allocated to goodwill,
> retention
> > of Holt and Lanius by Mattamy (Lanius retention is unusual). We have
> > not
> yet
> > countered. Initially, Mattamy verbally told me $20mm for the equity.
Also,
> > we must confirm that they are stopping negotiations with another
> > Jacksonville builder.
> >
> > MDC: $13.5mm at closing plus the after tax profits from Jan 1 to
closing.
> > Should be around $1.5mm additional. Plus they are offering $3000 per
home
> > for 1000 homes starting with closings in 2006. A very delayed
> > earnout.
> >
> > Toll: $14mm at closing plus 50pct of EBITDA above $6.5mm in year 1,
$7.5mm
> > in year 2 and $8.5mm in year 3 capped at $2mm per year.
> >
> > MDC appears firm on price. Toll could move up by $500k on the up
> > front
and
> a
> > slight lowering of ebitda hurdles. This should garner us another
> > $1mm
> total
> > consideration. Mattamy has not been countered yet and I assume they
> > will
> pay
> > $18 or $19mm up front.
> >
> > Of course, any one person could walk on the deal after detail due
> diligence.
> > The challenge is to pick the most likely closer. Mdc is offering to
> > move
> the
> > fastest but has the likely lowest consideration.
> >
> > Let's discuss today.
> > Tony Avila
> > Managing Director
> > JMP Securities
> > One Embarcadero, Suite 2100
> > San Francisco, CA 94111
> > Phone: 415.835.8924
> > Mobile: 415.720.8503
> >
> >
```

2

# George Buchler

| | |
|---|---|
| **From:** | George Buchler |
| **Sent:** | Wednesday, April 09, 2003 8:13 AM |
| **To:** | 'Arenson Avie' |
| **Cc:** | Gene Krieger |
| **Subject:** | RE: Summary of Proposals for ABI |

Let me try to respond to your concerns --

1. The Bill Lanius requirement is contained in one of the three offers that we are currently negotiating. At this point, since we don't even know which offer will be accepted, it is premature to debate this issue.

2. As you know, ALH has a severe liquidity crisis - pending litigation, inability to take down huge land positions in Florida, Swiss Re/Wachovia debt, etc. To provide some liquidity, ABI is being sold. If you or any of the other "B" investors can propose an alternative solution, as always, we're ready to listen. As we were unsuccessful in selling the company intact, selling it piecemeal appears to be the only other alternative to meet ALH's obligations.

As we get closer to accepting one of the offers, we'll keep you informed.

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Tuesday, April 08, 2003 1:50 AM
To: George J. Buchler (George Buchler)
Subject: Fw: Summary of Proposals for ABI


----- Original Message -----
From: "Arenson Avie" <avie@arenson.co.il>
To: "Shalom Lamm" <slamm@lionlamm.com>

Sent: Tuesday, April 08, 2003 10:48 AM
Subject: Re: Summary of Proposals for ABI


> Hello Shalom:
>
> Any deal which involves losing Bill Lanius is  absolutely
> unacceptable.
An
> improved Toll is probably the best offer of the three bad offers.. If
> the majority of the Board decides so.  Personally  I think that it is
> not in the best interests of ALHII to  sell itself piecemeal.
>
> Avie
> ----- Original Message -----
> From: "Shalom Lamm" <slamm@lionlamm.com>
> To: "Arenson Avie" <avie@arenson.co.il>
> Sent: Monday, April 07, 2003 6:19 PM
> Subject: FW: Summary of Proposals for ABI
>
>
> > Please read below. Any thoughts?
> >
> > --
> > Shalom Lamm
> > Phone: 516-565-0868
> > fax: 516-565-1819
> > cell: 917-282-7375

1

```
> >
> > ----------
> > From: "Anthony Avila" <tavila@jmpsecurities.com>
> > Reply-To: "Anthony Avila" <tavila@jmpsecurities.com>
> > Date: Mon, 7 Apr 2003 11:33:00 -0400
> > To: slamm@lionlamm.com
> > Cc: shaynes@jmpsecurities.com
> > Subject: Summary of Proposals for ABI
> >
> > Gentlemen,
> >
> > Here is the summary of proposals from 3 interested parties:
> >
> > Mattamy: $16mm at closing, 50pct of premium allocated to goodwill,
> retention
> > of Holt and Lanius by Mattamy (Lanius retention is unusual). We have
> not
> yet
> > countered. Initially, Mattamy verbally told me $20mm for the equity.
Also,
> > we must confirm that they are stopping negotiations with another
> > Jacksonville builder.
> >
> > MDC: $13.5mm at closing plus the after tax profits from Jan 1 to
closing.
> > Should be around $1.5mm additional. Plus they are offering $3000 per
home
> > for 1000 homes starting with closings in 2006. A very delayed
> > earnout.
> >
> > Toll: $14mm at closing plus 50pct of EBITDA above $6.5mm in year 1,
$7.5mm
> > in year 2 and $8.5mm in year 3 capped at $2mm per year.
> >
> > MDC appears firm on price. Toll could move up by $500k on the up
> > front
and
> a
> > slight lowering of ebitda hurdles. This should garner us another
> > $1mm
> total
> > consideration. Mattamy has not been countered yet and I assume they
> > will
> pay
> > $18 or $19mm up front.
> >
> > Of course, any one person could walk on the deal after detail due
> diligence.
> > The challenge is to pick the most likely closer. Mdc is offering to
> > move
> the
> > fastest but has the likely lowest consideration.
> >
> > Let's discuss today.
> > Tony Avila
> > Managing Director
> > JMP Securities
> > One Embarcadero, Suite 2100
> > San Francisco, CA 94111
> > Phone: 415.835.8924
> > Mobile: 415.720.8503
> >
> >
```

2

# Exhibit F

Subject: FW: ALHII

Somehow, the first transmission was returned - let's see if this works.

-----Original Message-----
From: George Buchler
Sent: Monday, September 15, 2003 11:34 AM
To: 'Arenson Avie'; Gene Krieger; Bruce Stein
Cc: Shalom Lamm
Subject: RE: ALHII

Dear Avie,

To answer your concerns, I believe we need a meeting - either telephonic or in person. We would be happy to discuss your and the other "B" investors' concerns. Let us know your preference for a time and place for a meeting, and we will try to accommodate.

When we meet, propose a plan to solve the issues you and your colleagues perceive. The plan must be concrete and include a program for implementation - who, how, when, etc. The Board will of course give it serious consideration.

ALH continues to experience significant operating and financial issues. Shamrock - Bruce, Gene and I - literally spend time every single day dealing with these issues on behalf of all the investors. This week Bruce is travelling to Memphis and Charlotte to attend to their operating issues, while Gene and I work on the Bowden sale and finalizing the ABI closing. It is disturbing and frustrating that there appears to be no understanding or recognition of the Shamrock efforts to try and keep ALH moving in the right direction for everyone's benefit.

We look forward to our meeting.

George

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Friday, September 12, 2003 2:13 AM
To: George Buchler; Eugene I. Krieger (Gene Krieger)
Cc: Shalom Lamm
Subject: ALHII

I have followed with great interest the recent exchange between Shalom and George on the pressing issues facing us.
There are a number of issues that are of grave concern to me and the other B investors.
* Swiss Re- We fear that contacting Swiss Re without Jon Zich, who clearly has the relationship that has proven productive, is a serious misstep ....Moreover, to do so without a comprehensive plan that makes sense is fraught with risk. Both John and Bill are fine people, but in light of their individual circumstances neither can represent ALH with Swiss Re, Wachovia or Ohio, in a meaningful way. We need a management plan that is

credible, before we approach any lender.

* Ohio Savings Bank- We discussed this potential issue, when we met in Charlotte. You discounted our concern. We fear that LaGuardia's current efforts to buy Memphis, hardly makes him the appropriate person to gain Ohio's confidence for North Carolina. We suspect that Ohio might know about LaGuardia's efforts, as they are very connected to the home building industry, where this is not a secret.

* Memphis - The fall off in July and August results is very troubling, especially since the results of other homebuilders has been so robust. The pale of a potential sale seems to be affecting us severely.

We have limited input and no actual control over your decisions on how ALH is to be run. We think that the piecemeal sale approach was inappropriate and appears to be leading to ominous results. We again ask you to reconsider what you are doing and to take steps to remedy the matters referred to above

Avie Arenson

# Exhibit G

| | |
|---|---|
| **From:** | Arenson Avie |
| **Sent:** | Wednesday, December 18, 2002 3:08 AM |
| **To:** | Gene Krieger; George Buchler |
| **Cc:** | Michael G. Jesselson (E-mail); Michel Konig (E-mail); Isaac M. Neuberger |
| **Subject:** | ALHII |

Dear George and Gene:

Since our last conference call, (Gene, George, Isaac and me) the meeting with Swiss Re occurred and I know that you were gratified (as were we) to hear of the extension. Obviously, we now need to get Wachovia to accept the Swiss Re "bond" or find a different bank that will. There is real doubt on our part that Wachovia will not see this as an opportunity to force us out of the Bank. Wachovia is in fact First Union (in the merger, First Union bought Wachovia and changed their name) and they have shown NO interest in continuing their relationship with ALH.

In that connection and in connection with expanding the Ohio Savings Bank facilities, we remain gravely concerned that the sale of Bowden will seriously impair the viability of ALH, as while it might serve some short term end and may fund the Bowden litigation settlement, which we feel is not a "priority", it will hinder and cripple ALH going forward. The "auction"
process is busted and it has made ALH look even weaker.

The Bs are prepared to fund needed working capital. We appreciate that the As have made a decision to exit and are NOT prepared to invest additional amounts. Since we fear that we have been placed in a liquidation mode, the Bs, in an effort to save their investment and seize an opportunity (that the As either do not believe is there or that they choose not to pursue) have been willing to offer the As a limited sum to exit and it is that amount that we need to agree upon.

What the Bs simply can not accept is to allow the As to liquidate ALH in a piecemeal fashion.

That said, we need to conclude a buy-out of the As on mutually acceptable terms or recommit ourselves to running ALH in a positive and forward looking manner and abandon, for the time being, the notion of a sale.

I look forward to hearing from you.

Avie

1

B00042